# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

900 THIRD AVENUE • 20TH FLOOR
NEW YORK, NEW YORK 10022-4728
(212) 751-3001
FAX (212) 751-3113
www.tklaw.com

DIRECT DIAL: (212) 751.3768
EMAIL: Gabrielle.Farina@tklaw.com

AUSTIN
DALLAS
DETROIT
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MONTERREY
PARIS

August 15, 2012

***Via ECF and Regular Mail***

Honorable John Gleeson
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Aleph Towers, LLC, et al v. Ambit Texas, LLC, et al*, No. CV-12-3488.

Dear Judge Gleeson:

This firm represents the defendants in the above-referenced action.  As Your Honor may be aware, at the time Plaintiffs commenced this action, they contended that it was related to another action titled *BH Seven, LLC v. Ambit Energy, L.P., Jere W. Thompson, Jr., and Chris Chambless*, Case No. 11-CV-2483, pending before the Honorable Allyne R. Ross (Notice of Related Case, Docket No. 3).  In light of this, defendants thought it was prudent to alert the Court to the Opinion and Order entered by Judge Ross yesterday.  For the Court's convenience, enclosed please find a copy of the Opinion and Order.

Respectfully submitted,

/s/ *Gabrielle E. Farina*

Gabrielle E. Farina

*cc*:     Daniel Hymowitz, Esq. (*via ECF*)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 14 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                            :
BH SEVEN, LLC,                                              :        NO. 11-CV-2483
                    Plaintiff,                             :        (ARR)(RER)
                                                            :
    -against-                                              :        NOT FOR ELECTRONIC
                                                            :        OR PRINT PUBLICATION
AMBIT ENERGY, L.P., JERE W. THOMPSON, JR., and             :
CHRIS CHAMBLESS                                            :        OPINION AND ORDER
                                                            :
                    Defendants.                            :
                                                            :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

In the instant action, plaintiff, BH Seven, LLC ("BH Seven"), brings claims against

Ambit Energy, L.P. ("Ambit"), and individual defendants Jere Thompson, Jr. and Chris

Chambless for breach of contract and recovery in quantum meruit. Now before the court is

defendants' motion to dismiss. For the reasons set forth below, defendant's motion to dismiss is

granted.

## I. Background

### A. Procedural History

Plaintiff, an organization under the control of Nicole Gubin, initiated a lawsuit on May

23, 2011, raising fifteen causes of action against Ambit Energy, Thompson, Jr., and Chambless

as well as twenty-three additional defendants. In addition to the breach of contract and unjust

enrichment causes of action in plaintiff's Second Amended Complaint, plaintiff also asserted

fraud, RICO, slander, libel, harassment, discrimination, and claims under other federal statutes,

such as the Federal Trade Commission Act, 15 U.S.C. § 45(a). At a pre-motion conference

regarding an anticipated motion to dismiss on June 30, 2011, the court identified numerous

pleading infirmities in the original complaint, including, inter alia, causes of action arising under federal statutes with no private rights of action, failure to plead subject matter or personal jurisdiction, and failure to plead facts supporting wholly conclusory allegations. The court granted plaintiff leave to amend and file its "last and best complaint," which plaintiff filed on July 22, 2011. At a second pre-motion conference on August 26, 2011 regarding an anticipated motion to dismiss, the court once again reviewed plaintiff's pleadings and highlighted several jurisdictional and substantive deficiencies. Despite the earlier admonition that plaintiff's First Amended Complaint following the pre-motion conference would be its "last and best," the court granted plaintiff leave to file a Second Amended Complaint, stating that the complaint would be plaintiff's "last pleading," that it would be "put to the test by a motion by the defendants," and "if [plaintiff] didn't plead certain causes of action," they would be dismissed with prejudice. Dkt. No. 21, at 30. Plaintiff's counsel acknowledged and agreed that the new pleading would be the final one.

Plaintiff filed its Second Amended Complaint on September 28, 2011, this time eliminating all but three of the defendants—Ambit, Thompson, Jr., and Chambless—and all but three causes of action—two for breach of contract and one for unjust enrichment/quantum meruit.[1] Defendant now moves to dismiss the Second Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

### B. The Second Amended Complaint

The court derives the following facts from the Second Amended Complaint (the

---

[1] Though plaintiff eliminated all of the other causes of action, some of the language from these withdrawn causes of action—specifically, slander, libel, discrimination and fraud—appear in some form in the remaining causes of action. Because the complaint explicitly includes only three causes of action—breach of contract against Ambit, breach of contract against the individual defendants, and quantum meruit—the court will regard these vestiges of previous pleadings as withdrawn claims.

"Complaint"). All factual inferences are drawn in favor of plaintiff.[2]

### 1. *Basis of Jurisdiction*

As plaintiff has withdrawn all of its federal claims from the Second Amended Complaint, plaintiff relies on diversity of citizenship to invoke this court's jurisdiction. In support of diversity jurisdiction, the complaint alleges that plaintiff, BH Seven, LLC, is a corporation, formed in New York, "with its principal place of Citizenship being in the State of New York." The Complaint alleges that each of the individual defendants is a citizen of Texas. With respect to defendant Ambit Energy, L.P., plaintiff alleges that:

> Ambit Energy, L.P., having General Partners, a Texas domestic limited partnership known as Ambit GenPar, Inc., has a Citizenship in Texas, and a business address located at 1801 N. Lamar Street, Suite 200, Dallas, Texas 75202. The President of Ambit Energy, L.P. is Jere W. Thompson, Jr. having the citizenship at 1801 N. Lamar Street, Suite 200, Dallas, Texas 75202.

### 2. *Substantive Allegations*

Ambit buys natural gas and electricity in bulk and distributes it to customers in energy-deregulated states, including New York. Compl. Ex. A, at 6. Ambit employs what it refers to as a multi-level marketing structure.[3] For a fee, Ambit authorizes independent consultants to recruit customers and other independent consultants for the company in return for compensation, including residual income and bonuses for achieving certain recruiting targets. Compl. ¶ 2. In

---

[2] The court notes that while the Second Amended Complaint is more concise than previous iterations, it is no less difficult to follow. Terms such as "residual checks", "downline", "energized", "Level 0", "Level 3", and "Band 1", despite allegedly being essential to plaintiff's claims, are left undefined, leaving the court to wade through materials attached to plaintiff's response to gain a better understanding of the relationship between the parties.

[3] A multi-level marketing structure is commonly referred to as a pyramid sales structure, by which the sales force is compensated not only for personally generated sales, but also for sales generated by other salespeople whom they recruited. This is not to suggest that multi-level marketing *per se*, or the business model employed by Ambit, is a "pyramid scheme." What determines whether a multi-level marketing plan is a "pyramid scheme" often depends on whether money is generated primarily on the basis of fees collected form recruiting other consultants, rather than from sales of an actual product to the public. See Federal Trade Commission, Bureau of Consumer Protection, The Bottom Line About Multilevel Marketing Plans and Pyramid Schemes (Oct. 2009), available at http://business.ftc.gov/documents/inv08-bottom-line-about-multi-level-marketing-plans.

addition, Ambit Energy maintains a business-management website by which independent consultants manage and track their business. ¶ 4. The Complaint alleges that plaintiff, BH Seven, by its president, Nicole Gubin, entered into a "consulting contract" with Ambit via an "oral Agreement" with Ambit on July 22, 2007, during a telephone conversation with Ambit National Consultant Steven Thompson.[4] ¶ 1. Plaintiff alleges that Thompson had "binding authority" to enter into a contract with plaintiff. Id.

According to the Complaint, Ambit breached the oral agreement by failing to "accurately compensate" plaintiff. ¶ 3. Plaintiff alleges that Ambit, in addition to consistently underpaying plaintiff on a month-to-month basis since December 2007, failed to provide accurate "perpetual residual checks," free energy supplies for gas and electricity, and promotional bonuses to which plaintiff was entitled. ¶¶ 3, 5-10. Plaintiff also alleges that defendants breached the agreement by "arbitrarily" suspending plaintiff's access to the Ambit website, which resulted in plaintiff's loss of recruited customers and consultants and damaged her reputation, ¶ 4, and that Ambit prevented plaintiff from receiving the promotional bonuses to which it was entitled by "fraudulently canceling the last customer required for additional promotion bonuses," ¶ 10.

Finally, in a third cause of action, plaintiff seeks to recover in quantum meruit, alleging that defendants were unjustly enriched by plaintiff's efforts as an independent consultant to recruit "new consultants and customers for the supply of gas and electricity." ¶ 24.

The Complaint seeks damages of $20,000,000 and $10,000,000, respectively, for its breach of contract action against Ambit and the individual defendants, and $20,000,000 for its quantum meruit claim. Plaintiff also seeks an award of punitive damages.

---

[4] It is not entirely clear to the court with whom Nicole Gubin actually spoke on July 22. Plaintiff's response appears to suggest that Gubin actually entered into the agreement with "Yuri Kasparov," her immediate sponsor, and this agreement was later confirmed when Kasparov forwarded her information to Steven Thompson.

4

## II. Discussion

Defendants now move to dismiss plaintiff's complaint for lack of subject matter jurisdiction, lack of personal jurisdiction over individual defendants Thompson, Jr. and Chambless, and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6).

### B. Lack of Subject Matter Jurisdiction

Defendants move to dismiss the complaint for lack of subject matter jurisdiction on the ground that plaintiff's complaint fails to establish diversity. Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). As the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on facts existing at the time the complaint was filed. Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996). For the purposes of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may consider affidavits and other materials beyond the pleadings. See J.S. ex rel. N.S., 386 F.3d at 110; Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

The jurisdiction of federal courts is limited to matters over which they have proper subject matter jurisdiction. Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001). Because the instant action involves issues exclusively of state law, the court may entertain the case only if it meets the requirements of diversity jurisdiction. These requirements include, inter alia, that a complaint allege facts sufficient to establish that all plaintiffs possess state citizenship that is diverse from that of all defendants. 28 U.S.C. § 1332(a); Exxon Mobil Corp. v. Allapattah

5

Servs., Inc., 545 U.S. 546, 553-54 (2005) ("Incomplete diversity destroys original jurisdiction with respect to all claims."). In order to avoid dismissal, plaintiff must allege the citizenship of each of the parties. See Baer v. United Servs. Auto. Ass'n, 503 F.2d 393, 397 (2d Cir. 1997) ("Such a complaint, which on its face fails to negate the possibility that diversity does not exist, is defective."). For the purposes of diversity jurisdiction, a partnership or a limited liability company has the citizenship of *each* of its partners or members, respectively. Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (discussing citizenship of partnerships); Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000) (discussing citizenship of limited liability companies). Accordingly, a complaint invoking federal diversity jurisdiction where one of the parties is a partnership or LLC must allege the citizenship of each of the partners or members. Moreover, if one of the partners or members is itself a partnership or LLC, plaintiff must also allege the citizenship of those constituent partners or members. See Arias v. Budget Truck Trust 1, No. 09 Civ. 0774 (BMC), 2009 WL 604864 at *1 (E.D.N.Y. Mar. 5, 2009).

On its face, the Second Amended Complaint plainly fails to state a basis for federal diversity jurisdiction under § 1332. First, plaintiff states that BH Seven, a limited liability company, is a citizen of New York because its principal place of business and state of organization is New York. These factual allegations alone, however, do not suffice to establish BH Seven's citizenship. Because BH Seven is a limited liability company, plaintiff must plead the citizenship of each of BH Seven's members. See Handelsman, 213 F.3d at 51-52. Plaintiff has failed to state the citizenship of, or even to identify, any of BH Seven's members in the Complaint. The court therefore cannot ascertain the citizenship of plaintiff, BH Seven, and

6

whether it is diverse from all defendants.[5]

Plaintiff has similarly failed to establish the citizenship of defendant Ambit Energy, L.P., by failing to plead the citizenship of any of its partners. Instead, plaintiff merely states that Ambit GenPar is *one* general partner of Ambit Energy, L.P., that Ambit Genpar is a citizen of Texas, and that Jere Thompson, Jr., a citizen of Texas, is a president of Ambit Energy, L.P. Plaintiff does not identify any of the other members of Ambit Energy or, alternatively, allege that Ambit Genpar is the sole partner of Ambit Energy. The citizenship of GenPar, without allegations that it is the relevant—and only—member of Ambit Energy, L.P., fails to "negate the possibility that diversity does not exist." Herrick Co, Inc., 251 F.3d at 322. Even if Ambit Genpar is the sole partner of Ambit Energy, plaintiff does not sufficiently plead Ambit Genpar's state of citizenship. Plaintiff alleges that Ambit Genpar is a limited partnership. In order to ascertain its citizenship, plaintiff therefore must also allege the citizenship of all of the partners of Ambit Genpar.

Accordingly, plaintiff has failed to allege facts that permit the court to assess the basis of its jurisdiction. For instance, the citizenship of any of the other partners of Ambit Energy, L.P. or Ambit GenPar, Inc., could destroy diversity between the parties if that partner was a citizen of the same state as any of the members of B.H. Seven.[6] Because plaintiff has failed to allege facts that establish the citizenship of plaintiff B.H. Seven or defendant Ambit Energy, L.P., the

---

[5] In its response, plaintiff does state that "Nicole Gubin is a sole proprietor of BH Seven, LLC." Pl. Mem. In Resp. at 10. If plaintiff can allege in good faith that Ms. Gubin is the sole member of the LLC, and that Ms. Gubin is a citizen of New York, as it alleged in prior complaints, the complaint can establish plaintiff's citizenship.

[6] The court notes that plaintiff's response attaches several documents which appear to set forth—or at least provide a good faith basis for plaintiff to allege—that Ambit GenPar, Inc. is the lone partner of Ambit Energy L.P, and that Jere Thompson, Jr. is the lone member of Ambit GenPar. See Pl. Response, Exs. A & B. Likewise, plaintiff's previous pleadings indicate that Nicole Gubin, presumably the sole member of BH Seven, is a citizen of New York for the purposes of diversity jurisdiction. To survive a motion to dismiss, however, plaintiff must allege these facts in the complaint.

Complaint fails to allege a basis for subject matter jurisdiction. Plaintiff must allege—at least in good faith and upon information and belief—the citizenship of each of the partners and members of any unincorporated associations that are parties to the action. [7]

### C. Lack of Personal Jurisdiction over Thompson, Jr. and Chambless

Defendants also move to dismiss the complaint against individual defendants Thompson, Jr. and Chambless for lack of personal jurisdiction. Because plaintiff fails to allege any facts in the complaint that establish that this court has personal jurisdiction over the individual defendants, the court agrees.

When responding to a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). A plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction." Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990). "Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" Id. (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). "[A]ll pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

In diversity cases, in order to assess whether it has personal jurisdiction, this court must

---

[7] The court takes judicial notice of a separate litigation filed by an Ambit consultant in the Eastern District of New York before United States District Judge John Gleeson: Aleph Towers, LLC v. Ambit Texas, LLC, 12-cv-3488-JG-JO (E.D.N.Y. 2012). In a pre-motion letter regarding an anticipated motion to dismiss, defendants' counsel represented that Ambit Energy, L.P. is "no longer in existence and should be dismissed from the case." See Dkt. No. 5. If plaintiff files a third amended complaint, it is advised to ensure that it has identified the correct defendant entity.

undertake a two-step analysis. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002). First, it must determine whether New York's long arm statute would confer upon its courts the jurisdiction to reach individual defendants. Id. If there is a statutory basis for jurisdiction, "the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." Id. (citation omitted).

The relevant statute in this case is N.Y.C.P.L.R. § 302(a), which states:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

At the second stage of the inquiry, in order for a court's exercise of personal jurisdiction to comport with due process, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). In determining the existence of minimum contacts, the court must "consider[] 'the relationship among the defendant, the forum, and the litigation.'" Kernan v. Kurz-Hastings, 175 F.3d 236, 242 (2d Cir. 1999) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

In order to find specific jurisdiction over the defendant, the action against the defendant

9

must arise out of and be related to the defendant's contacts with the forum. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996). In such cases, the plaintiff must also show that the defendant "purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." Kernan, 175 F.3d at 242-43 (internal citations and quotations omitted).

In the second stage of the due process inquiry, the court must determine "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the particular case." Id. at 243 (internal citations and quotations omitted). The Second Circuit has identified five factors for the court to consider in deciding this question: (1) the burden that the assertion of jurisdiction will impose on the defendant, (2) New York's interests in adjudicating the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and (5) the shared interest of the states in furthering social policies. See id. When a plaintiff makes a showing of minimum contacts, the burden is on the defendant to make "'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Because the Complaint fails to allege any facts suggesting that Thompson, Jr. or Chambless had any contacts with New York, the court cannot ascertain whether there is personal jurisdiction under New York's long arm statute or the Fourteenth Amendment. Plaintiff did not meet its burden to plead "legally sufficient allegations of jurisdiction" over the individual defendants under New York's long arm statute or the constitution. Ball, 902 F.2d at 197.

**D. Failure to State a Claim**

10

Defendants also move to dismiss plaintiff's breach of contract claims on the grounds that (1) plaintiff fails to allege adequate facts supporting a theory that Steven Thompson had the actual or apparent authority to bind Ambit L.P. to the alleged oral agreement, and (2), even if an agreement between plaintiff and defendant existed, plaintiff fails to allege the terms of the agreement upon which liability is based or plaintiff's performance under that contract.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a case should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc., 301 Fed. App'x 97, 99 (2d Cir. 2008) (citation omitted). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ortiz v. Cornetta, 557 F.3d 646, 649 (2d Cir. 1989). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 555 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement." Iqbal, 555 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

### 1. Breach of Contract against Ambit

In order to plead a breach a contract cause of action under New York law, a plaintiff must

"identify (1) the existence of a contract; (2) performance by one party; (3) breach of the contract by the other party; and (4) resulting damages." Fink v. Time Warner Cable, 810 F.Supp.2d 633, 644 (S.D.N.Y. 2011) (citing Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)).

### a. Existence of the Contract

Plaintiff fails to plead sufficient facts establishing the formation of a contract between B.H. Seven and Ambit. The complaint suffers from several infirmities in this regard.

First, plaintiff fails to plausibly state how BH Seven entered into an agreement with either Ambit or the individual defendants. The complaint alleges that "BH Seven, by its President Nicole Gubin, entered into a consulting agreement with Defendant Ambit on or about July 22, 2007 to build a network marketing. [sic]" Compl. ¶ 1. According to plaintiff's two prior complaints as well as its articles of incorporation, however, Gubin did not form BH Seven until October 18, 2010, more than three years after the date of the alleged agreement. See Original Complaint, ¶ 2 (Dkt. No. 1); First Amended Complaint ¶ 3; In re Parmalat Securities Litigation, 421 F.Supp.2d 703, 713 (S.D.N.Y. 2006) (holding that admissions made in prior pleadings are ordinarily "controvertible, not conclusive, admissions"). Therefore, the only plausible manner in which Ambit could have entered into a contractual agreement with BH Seven is if Gubin lawfully assigned her rights under the alleged contract to BH Seven. Plaintiff, however, fails to allege such an assignment of rights.[8]

Second, plaintiff fails to establish that Ambit Energy, or the individual defendants, could be bound by an agreement entered into by National Consultant Steven Thompson. Plaintiff's conclusory statement that Steven Thompson, a Senior Ambit Consultant, had "binding authority"

---

[8] In its First Amended Complaint, plaintiff alleged that Gubin's "interests in Ambit Energy [were] transferred from her personal name to BH Seven." ¶ 3. It is unclear why this allegation was excised from the most recent pleading.

to enter into an obligation is insufficient to allege an agency relationship sufficient to withstand a motion to dismiss. A principal is bound by obligations created by its agent, when its agent performs within the scope of his authority. In order to plead the existence of a contract under an agency theory, plaintiff must plead facts, which if believed, set forth the basis of the agent's authority. "Under New York Law, 'an agent must have authority, whether apparent, actual or implied, to bind his principal.'" Id. (quoting Merrill Lynch Interfunding, Inc. v. Argenti, P 155 F.3d 113, 122 (2d Cir. 1998)). Moreover, even at the pleading stage, "[a plaintiff] must do more than state the legal conclusion that [a subsidiary] was the defendants' agent, it must plead facts that support a finding that such agency existed." Maung Ng We v. Merrill Lynch & Co., Inc., No. 99 CIV. 9687(CSH), 2000 WL 1159835, at *5-6 (S.D.N.Y. Aug. 15, 2000); see also Spagnola v. Chubb Corp., 264 F.R.D. 76, 88 (S.D.N.Y. 2010) ("[C]ourts routinely dismiss claims based on agency theory where such pleadings contain insufficient allegations in that regard.").

Plaintiff argues that the Thompson had "actual and apparent authority" to bind Ambit. Actual authority "is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him." Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 68 (2d Cir.2003). "To establish actual agency, a plaintiff must demonstrate the following elements: (1) manifestation by the principal that the agent shall act for him; (2) the agent accepted the undertaking; and (3) an understanding between the parties that the principal is to be in control of the undertaking." Spagnola, 264 F.R.D. at 89.

"To adequately plead the existence of apparent authority, a plaintiff must allege words or conduct of the principal, communicated to a third party, that give rise to the appearance and

belief that the agent possesses authority to enter into a transaction on behalf of the principal." Id. at 90. To recover on a theory of an agent's apparent authority, plaintiff must plead that "(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representation of the agent." Id.

The Second Amended Complaint is devoid of any facts establishing that Thompson had actual or apparent authority to bind Ambit to the terms of a contract. Rather, plaintiff states only that Thompson had "binding authority" to execute agreements on behalf of Ambit. Compl. at ¶ 1.[9] This conclusory allegation falls well short of establishing an agency relationship.[10] Plaintiff must allege facts and circumstances, upon at least good faith information and belief, that if believed, would establish Thompson's actual or apparent authority.

Because plaintiff failed to allege facts establishing how BH Seven became party to an agreement entered into more than three years before it came into existence, or establishing Thompson's authority as an agent to bind Ambit, plaintiff has failed to plead the existence of a contract between the parties.

b. Terms of the Contract

Even if a contract did exist between Ambit and plaintiff, however, the Complaint nevertheless fails to state a claim for breach of contract. "In order to plead a breach of contract

---

[9] As noted supra, plaintiff's response suggests that the actual oral agreement was entered into by Yuri Kasparov, who plaintiff alleges also had "binding authority."

[10] Plaintiff contends that "the Court can deduce the actual and apparent authority at the multi-level-network marketing MLM's customs of the business, the subject matter, formed agreements between the parties, and facts both parties are aware [sic]." Pl.'s Memorandum in Response, at 30-31. Plaintiff, however, fails to allege sufficient facts from which the court could make such a deduction. Plaintiff is reminded that it must affirmatively plead facts and circumstances—not conclusions—which, if believed, establish an agency relationship. Plaintiff's response appears to set forth a plausible basis from which plaintiff could plead apparent authority. Plaintiff states that Thompson approved Gubin's information and payment—after which she received a "starter kit in the mail and access to [the Ambit business software.]" The court believes plaintiff to be suggesting that Ambit sent her a starter kit and gave her access to its business website in exchange for her payment and information. Such conduct by Ambit might "give rise to the appearance and belief that [Steven Thompson] possesse[d] authority to enter into a transaction on behalf of the principal." Spagnola, 264 F.R.D. at 89.

cause of action, a complaint must allege the provisions of the contract upon which the claim is based." Atkinson v. Mobil Oil Corp., 614 N.Y.S.2d 36, 36 (2d Dep't 1994). "A breach of contract claim will be dismissed as being 'too vague and indefinite,' . . . where the plaintiff fails to allege, in nonconclusory fashion, 'the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.'" Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01 Civ. 2272(GBD), 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (quoting Sud v. Sud, 621 N.Y.S.2d 37, 38 (N.Y.App.Div.1995). See id. ("[W]hile a plaintiff is not required to attach a copy of the contract or to plead its terms verbatim, a complaint in a breach of contract action must nevertheless set forth the terms of the agreement upon which liability is predicated.").

Despite three attempts, plaintiff has failed to coherently state the terms of the alleged oral contract, and specifically, the provisions upon which defendant's alleged breach is predicated.[11] Instead of alleging, as it must, (1) the specific terms of the agreement, (2) plaintiff's own performance under that agreement, and (3) the nature of defendants' breach, the Complaint vaguely describes the nature of the parties' relationship since 2007 and states, without explaining, that plaintiff was inadequately compensated. This is insufficient to state a claim for breach of contract.

The Second Amended Complaint states that Ambit compensated plaintiff "in the form of weekly bonus checks, monthly residual checks, monthly performance bonus[es], and free energy supplies for gas and electricity." Compl. ¶ 3. The Complaint, however, never sets forth how

---

[11] Plaintiff attaches to the complaint the "Business Presentation Script-New York" which it alleges to be the "current" presentation provided by Ambit to prospective customers and independent consultants such as BH Seven. Plaintiff's own complaint, however, precludes the court from relying on this presentation for stating the terms of any contract between the parties. Plaintiff states unequivocally that BH Seven (more accurately, Nicole Gubin) entered into an oral agreement with Ambit in 2007 but nowhere alleges that this oral agreement incorporated the terms of the attached presentation. From the pathline "v05212010" stamped on each page, appears to have been generated in May of 2010.

these amounts are calculated under the agreement, or how the amounts actually paid undercompensated plaintiff. For instance, the complaint states that plaintiff "was supposed to receive accurately calculated perpetual residual checks, but did not due to the breach of contract by Defendant Ambit." Id. Such a vague and conclusory statement of liability—without an explanation as to how perpetual residual checks must be "accurately calculated" under the contract, what perpetual residual checks were actually paid to plaintiff, and how these residual checks failed to adequately compensate plaintiff, fails to state a claim for breach of contract.

The remainder of the complaint similarly fails to allege with specificity either the terms of the agreement or the nature of the breach. For instance, plaintiff alleges that: its "paid internet website was suspended arbitrarily by Defendant Ambit in breach of the Agreement and convents of good faith [sic]"; that defendant "fraudulently cancel[ed] the last customer required for additional promotion bonuses"; that plaintiff "has always been underpaid by Defendant Ambit on a month[-]to[-]month basis from the beginning to the present"; that "Defendant Ambit breached the Agreement with the plaintiff by permitting transfers of customers on Plaintiff's downline into levels outside of Plaintiff's compensation"; and that "Defendant Ambit fraudulently purged Plaintiff's customers and customers [sic] on Plaintiff's downline out of the system to prevent accurate monthly and perpetual residuals compensation to be paid to the Plaintiffs in breach of the agreement." Compl. at ¶¶4-12. Plaintiff fails to link any of defendants' misconduct to specific provisions of the oral agreement. See Fink v. Time Warner Cable, 810 F.Supp.2d 633, 645 (2011) ("Th[e] simple characterization of the nature of the promise, and the equally simplistic allegations that Defendant failed to perform, are insufficient to make the requisite plausible factual demonstration of the basis of Plaintiff's claim.") (citing Twombly, 550 U.S. at 570); Broughel v. Battery Conservancy, No. 07-cv-7755 (GBD), 2009 WL 928280, at *5

16

(S.D.N.Y. Mar. 30, 2009) ("The plaintiff must [] clearly identify which contract provisions were breached as a result of the defendants' conduct.").

### c. Plaintiff's Performance Under the Contract

Moreover, with the exception of plaintiff's conclusory statement that plaintiff "buil[t] the business" for four years "with great tenacity and loyalty," BH Seven fails to specify its own performance under the alleged oral agreement. See Johnson v. Nextel Commc'ns Inc., 660 F.3d 131, 142 (2d Cir. 2011) ("In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.").

Because plaintiff's Second Amended Complaint fails to allege facts supporting the existence of an agreement between plaintiff and the defendants, fails to identify the contractual provisions breached by defendants, and fails to allege plaintiff's performance under that contract, plaintiff fails to state a claim for breach of contract.

### 2. Breach of Contract Against Individuals Thompson, Jr. and Chambless

In addition to the deficiencies just outlined above, plaintiff's breach of contract claim against individual defendants Thompson, Jr. and Chambless does not state a cause of action for another reason: plaintiff has failed to set forth any facts establishing that a contract existed between plaintiff and Thompson, Jr. or Chambless. Instead, plaintiff seeks to recover in contract against Thompson and Chambless because they "have acted egregiously in their operation of Ambit thereby warranting the Court to pierce the corporate veil and hold them individually liable for damages caused to BH Seven." Compl. ¶ 15. Plaintiff adds that Thompson and Chambless "discriminated against [Gubin], an observing Jewish female," "acted egregiously by overcharging the Plaintiff's customers beyond the local utilities rates," and exposed plaintiff to

17

"public hatred, shame, obloquy, contumely [sic], odium, contempt, ridicule, aversion, ostracism, degradation, disgrace, and it induced an evil opinion of Plaintiffs in the minds of the right-thinking persons [sic]." Compl. ¶¶ 18-20. Plaintiff's recital of Thompson, Jr. and Chambless's wrongdoing, however, fails to establish the existence of any actual agreement between these defendants and plaintiff for the purposes of a breach of contract claim.

Rather than alleging an agreement between plaintiff and the individual defendants, Plaintiff seeks to hold the individual defendants liable for breach of contract by "pierc[ing] the corporate veil." Under New York law, a court may disregard the corporate entity and hold the owners individually liable by showing "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997). Plaintiff fails to set forth any facts or circumstances establishing that either or both of the individual defendants exercised dominance and control over Ambit Energy, or that such was used to wrong plaintiff. The Complaint's vague allegations of Thompson, Jr. and Chambless's "egregious" conduct fails to establish a basis for "piercing the corporate veil."[12]

### 3. Unjust Enrichment/Quantum Meruit[13]

---

[12] Moreover, there appears to be no reason in this case to pierce the corporate veil. Plaintiff alleges that Ambit Energy is a partnership, not a corporation, and there is no need to pierce the corporate veil to hold its partners individually liable. See Soley v. Wasserman, 823 F.Supp.2d 221, 229 (S.D.N.Y. 2011). If plaintiff files a third amended complaint, depending on the defendant entity from which plaintiff ultimately seeks recovery, see supra note 7, plaintiff should take note of the nature of the entity and a consider a viable theory under which to hold individual defendants, if any, liable for that entity's wrongdoing.

[13] Plaintiff's memorandum in response to the motion to dismiss suggests, inaccurately, that the Second Amended Complaint states separate causes of action for unjust enrichment and quantum meruit. First, the Second Amended Complaint explicitly sets forth in a single count its entitlement to recovery for unjust enrichment and quantum meruit. Second, under New York law, courts "analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005); see also Seiden Assocs., Inc. v. ANC Holdings, Inc., 768 F.Supp. 89, 96 (S.D.N.Y.1991) ("[Q]uantum meruit and unjust enrichment are not separate causes of action. Rather, unjust enrichment is a required element for

Plaintiff also seeks to recover in quantum meruit for uncompensated services provided to Ambit since 2007.[14] Defendants move to dismiss on two grounds: (1) that plaintiff fails to plead its quantum meruit claim in the alternative to its breach of contract claim; and (2) that plaintiff fails to allege sufficient facts stating a claim for recovery in quantum meruit.

In order to recover in quantum meruit under New York law, a claimant must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (hereinafter, Midhudson). Accordingly, to state a claim for recovery in quantum meruit, plaintiff must establish "that [it], in good faith, provided services which defendants accepted. [It] also must allege facts showing that [it] rendered service with the reasonable expectation of receiving compensation therefor, and [it] must prove a basis for this Court to determine the reasonable value of [its] services." Broughel, 2009 WL 928280, at *8. A plaintiff, however, cannot recover in quantum meruit if a "valid, enforceable contract . . . governs the same subject matter." Mid-Hudson, 418 F.3d at 175. Furthermore, a "quantum meruit claim will be dismissed where the complaint contains nothing more than undefined and conclusory statements regarding the actual benefit plaintiff conferred on the defendant." Broughel, 2009 WL 928280, at *8.

The entirety of plaintiff's unjust enrichment claim consists of the following:

24. The Defendants have failed to properly compensate the Plaintiffs for their weekly

---

an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract."), rev'd on other grounds, 959 F.2d 425 (2d Cir.1992)) (internal citations omitted).

[14] It is unclear whether plaintiff intends to bring its claim to recover in quantum meruit against Ambit alone or all of the defendants. While the relevant portion of the complaint references only plaintiff's uncompensated services provided to Ambit, it also refers to the "Defendants" in the plural. Because plaintiff fails to state a claim for recovery in quantum meruit in any event, this cause of action is dismissed as to all defendants.

bonuses, monthly perpetual residual bonuses, and free energy supply payments. The plaintiff reasonably expects payment as Plaintiff supplied the Defendant Ambit with the benefits of new consultants and customers for the supply of gas and electricity. The misconduct by Defendant Ambit has resulted in Defendant Ambit being in possession of monies that belong to the Plaintiff. In the event of the dispute [sic] of the terms of the Agreement, then Plaintiffs can prevail on Unjust Enrichment calculated on a Quantum Meruit basis.

Compl. ¶ 24. Plaintiff then seeks $20,000,000 in damages for its unjust enrichment claim. ¶ 25.

As an initial matter, defendants correctly argue that plaintiff erred in failing to plead its quantum meruit claim in the alternative. While a plaintiff cannot recover in quantum meruit if a "valid, enforceable contract . . . governs the same subject matter," Mid-Hudson, 418 F.3d at 175, where "there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as contract, and will not be required to elect his or her remedies." Zuccarini v. Ziff-Davis Media, Inc., 762 N.Y.S.2d 621, 622 (2d Dep't 2003). Plaintiff's complaint seeks to recover in quantum meruit "in the event of [a] dispute of the terms of the Agreement." A dispute over the terms of the agreement, however, provides insufficient basis for plaintiff to recover in quasi contract. Rather, the dispute must be over whether there exists an agreement that covers the instant dispute.

Far more fatal to the complaint, however, is plaintiff's failure, despite three opportunities, to plead facts setting forth with any specificity the services plaintiff provided to defendant or the reasonable value of those services. Rather, the Second Amended Complaint states in a conclusory manner that plaintiff supplied Ambit with new consultants and customers, and demands the same damages it alleged on the breach of contract claim. See DeSilva v. North Shore-Long Is. Jewish Health Sys., 770 F.Supp.2d 497, 535 (E.D.N.Y. 2011) ("[B]ecause plaintiffs have set forth no more than vague and conclusory allegations regarding what services

they provided to defendants or what the reasonable value for these services was, they have failed to state a claim for quantum meruit.") (citing <u>Singerman v. Reyes</u>, 659 N.Y.S.2d 762, 763 (1st Dep't 1997)); <u>Hajny v. Best Roofing of New Jersey, Inc.</u>, No.11 Civ. 00173 (LJS), 2011 WL 249373, at *7 (S.D.N.Y. June 22, 2011) (dismissing claim where plaintiffs failed to "allege the reasonable value of the services they rendered to defendants"); <u>Broughel</u>, 2009 WL 928280, at *8 (dismissing quantum meruit claim where plaintiff's allegations of "valuable services" provided to defendant were "wholly conclusory and [did] not describe the precise services she rendered to [defendants]"); <u>Martin H. Bauman Assocs., Inc. v. H & M International Transport, Inc.</u>, 567 N.Y.S.2d 404, 498 (1st Dep't 1991) (dismissing complaint alleging claim in quantum meruit where plaintiff "merely assert[ed] in a conclusory, non-specific manner that plaintiff rendered recruitment services to defendant and demand[ed] the alleged contract price"). Accordingly, plaintiff fails to state a claim for recovery for unjust enrichment or quantum meruit.

### 4. Damages

Plaintiff's demand for punitive damages is plainly without merit. The Second Amended Complaint brings causes of action under theories of contract and quasi contract, not tort. It is black letter law that punitive damages are not recoverable in contract claims. <u>See</u> Restatement (2d) of Contracts at § 355 & cmt. a ("[T]he purpose of awarding damages is [] compensation and not punishment, and punitive damages are not appropriate.").

## 3. Leave to Replead

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." <u>Richardson Greenshields</u>

21

Securities, Inc. v. Lau, 825 F.2d 647, 653 n.3 (2d Cir. 1987). Defendants argue that plaintiff should not receive a fourth bite at apple in light of the judicial and litigant resources dedicated to this matter and the futility of plaintiff's efforts to set forth a viable cause of action.

The court recognizes that strong equities exist in favor of denying plaintiff another chance to amend the complaint. Plaintiff has already pleaded its claim three times, twice after reviewing defendants' arguments regarding their proposed motions to dismiss, and after participating in pre-motion conferences in which the court detailed the complaint's jurisdictional and substantive deficiencies. Plaintiff's counsel acknowledged on several occasions that the Second Amended Complaint would be its last, and that failure to sufficiently plead causes of action would result in their dismissal with prejudice. As noted above, plaintiff's most recent pleading fails to make basic allegations establishing subject matter or personal jurisdiction or to plead facts establishing the elements of its causes of action. For instance, that a breach of contract claim must allege the specific provisions upon which liability is based, or that a claim in quantum meruit must allege plaintiff's services and the reasonable value of those services, reflect fundamental legal principles. Perhaps just as significantly, plaintiff's Second Amended Complaint—albeit with fewer claims and defendants—remains just as perplexing and difficult to decipher as the initial pleading. While many of the complaint's deficiencies may be the fault of plaintiff's counsel, the court is mindful that plaintiff "voluntarily chose this attorney as [its] representative in the action, and [it] cannot now avoid the consequences of the acts or omissions of this freely selected agent." Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962).

Nevertheless, it cannot be said from the papers before the court that it is beyond doubt that one final amendment would be futile—i.e. that plaintiff cannot prove any set of facts that would entitle it to relief. Nor is there any reason to believe that plaintiff has acted in bad faith or

with undue delay. Dismissing the action in its entirety without granting plaintiff one final chance

to plead its claims would be a harsh—though perhaps justifiable—result. See Global Energy &

Mgmt, LLC v. Xethanol Corp., No. 07 Civ. 11049(NRB), 2009 WL 464449, at *4 (S.D.N.Y.

Feb. 24, 2009) (declining to dismiss claims with prejudice under similar circumstances and

finding that "such an outcome means focusing too much on the quality of plaintiff's counsel and

not enough on the quality of plaintiff's claims"). Having now walked through the myriad

deficiencies in the complaint, the court, in its discretion, permits plaintiff one final opportunity to

present a complaint that establishes subject matter and personal jurisdiction, and that alleges

specific facts and circumstances, which if believed by the court, entitle plaintiff to relief on its

substantive causes of action. When constructing this final pleading, plaintiff is advised to

carefully consider the viability of some of its claims and against whom those claims are asserted.

The court is mindful of the prejudice that defendants may suffer as a result of responding

to yet another complaint. Defendants' counsel has filed two pre-motion letters in anticipation of

a motion to dismiss the pleadings, participated in two lengthy conferences before this court, and

has been forced to move against the Second Amended Complaint, an expenditure of resources

that would not have been necessary had plaintiff filed a proper complaint in the first, second, or

third instance. A district court may in its discretion impose reasonable conditions, including

attorney's fees and costs, to address the prejudice suffered in such circumstances.[15] See 6

---

[15] Indeed, the court believes it is well within its discretion to dismiss plaintiff's claims with prejudice. See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (noting that a district court may dismiss a complaint without leave to amend in circumstances "where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"); Denny v. Barber, 576 F.2d 465, 471 (2d Cir. 1978) (denying plaintiff leave to file a Second Amended Complaint where district court had placed plaintiff on notice of the deficiencies of the initial complaint); Ercole v. Lahood, 2011 WL 1205137 (E.D.N.Y. March 29, 2011) (dismissing pro se plaintiff's claims without leave to amend "because the court had explicitly given plaintiff the last opportunity to replead these claims in his Third Amended Complaint"); Treppel v. Biovail Corp., No. 03 Civ. 3002(PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (finding leave to amend "would be futile because plaintiff has already had two bites at the apple and they have proven fruitless"); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F.Supp.2d 485, 504-505 (S.D.N.Y. 2003 ) (dismissing claims in plaintiff's Second Amended Complaint without leave to amend because

Charles A. Wright, et al., Federal Practice and Procedure § 1486 (3d ed.). Accordingly, the court will condition plaintiff's filing of a fourth and final complaint upon payment, for which plaintiff and plaintiff's counsel are jointly and severally liable, of reasonable attorney's fees and costs incurred by defendants in moving to dismiss the Second Amended Complaint. See, e.g., Global Energy & Mgmt, LLC, 2009 WL 464449, at *4 ("In deciding whether it should exercise its discretion to grant leave to amend a complaint, a court should take into account any prejudice that the opposing party will suffer as a result of the amendment, and may subject leave to amend to reasonable conditions.") (internal citation omitted); Combustion Prods. Mgmt, Inc. v. AES Corp., 05-CV-00929, 2006 WL 6816644, at * 8 (N.D.N.Y. June 27, 2006) (awarding attorney's fees as condition for filing third amended complaint); Hayden v. Feldman, 159 F.R.D. 452, 454-55 (S.D.N.Y. 1995) (awarding attorney's fees as condition for filing fourth amended complaint).

The court therefore grants plaintiff thirty (30) days to file its Third Amended Complaint on the condition that should plaintiff elect to file a Third Amended Complaint, defendant's counsel may submit an application for reasonable attorney's fees and costs associated with defendants' motion to dismiss the Second Amended Complaint to be assessed against plaintiff and its counsel, jointly and severally.

### III. Conclusion

For the reasons stated above, defendants' motion to dismiss the Second Amended Complaint is granted. Plaintiff is granted leave to file a third amended complaint within thirty (30) days of this order. If plaintiff does not file a third amended complaint within thirty (30) days of this order, the complaint will be automatically dismissed with prejudice in its entirety. If plaintiff does file a third amended complaint within thirty (30) days of this order, defendants'

---

"in light of . . . Plaintiff's multiple prior opportunities to address the legal insufficiencies of the claims asserted in this action, granting further leave to replead certain of Plaintiff's claims would be futile").

counsel may submit an application for attorney's fees and costs associated with defendants' motion to dismiss the Second Amended Complaint to be assessed against plaintiff and its counsel, jointly and severally.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated:        August 13, 2012
              Brooklyn, New York