UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEPH TOWERS, LLC, YURI (URI) KASPAROV<br><br>Plaintiffs,<br><br>-against-<br><br>AMBIT TEXAS, LLC, CHRIS CHAMBLESS, STEVEN THOMPSON<br><br>Defendants. | Civil Action No. 1:12-cv-03488-JG-JO<br><br>Jury Trial Demanded |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED VERIFIED COMPLAINT

DATE: December 7, 2012

Stephen C. Rasch
Texas Bar No. 16551420, *pro hac vice*

Gabrielle Farina
New York Bar No. 4363412

Matthew M. Mitzner
Texas Bar No. 24068911, *pro hac vice*

Thompson & Knight LLP
900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592

ATTORNEYS FOR DEFENDANTS
AMBIT TEXAS, LLC,
CHRIS CHAMBLESS, AND
ROBERT STEPHEN THOMPSON.

## TABLE OF CONTENTS

Page

I.   Summary of the Motion to Dismiss .................................................................1

II.  Argument and Authorities.............................................................................3

   A.   This Court Lacks Subject-Matter Jurisdiction ............................................3

        1.   Allegations of citizenship based "upon information.......................3
             and belief" do not invoke diversity jurisdiction

        2.   Plaintiffs' jurisdictional allegations fail on their face.....................4

        3.   Plaintiffs cannot use discovery to establish diversity ....................6
             of citizenship

   B.   This Court Cannot Exercise Personal Jurisdiction Over............................7
        Chambless and Thompson

        1.   Plaintiffs fail to satisfy their burden to make a prima....................7
             face showing of personal jurisdiction over Chambless
             and Thompson

        2.   Personal jurisdiction does not exist over Chambless......................9
             and Thompson

             a.   New York's long-arm statute would not permit ................9
                  the assertion of personal jurisdiction

             b.   Exercising personal jurisdiction over Chambless.............10
                  and Thompson does not comport with the Due
                  Process Clause

             c.   Exercising personal jurisdiction over Chambless.............11
                  and Thompson would be unreasonable

   C.   Plaintiffs Fail to State Claims for Which This Court Can ........................12
        Grant Relief

        1.   Kasparov fails to state a claim for fraud and deceit.......................13

             a.   Kasparov fails to supply facts supporting a ......................13
                  "strong inference" of intent to defraud

    b.  Kasparov fails to plead fraud with the particularity...........15
      that Rule 9(b) requires

    c.  Kasparov's legally insufficient fraud claim......................16
      invalidates his punitive damages request

  2.  Kasparov fails to state a claim for conspiracy ..............................16

    a.  The Complaint does not suggest an illegal ........................16
      agreement between Chambless and Thompson

    b.  Kasparov's conspiracy claim falls with his fraud ..............19
      claim

  3.  Kasparov fails to state a claim for breach of fiduciary duty ..........20

  4.  Plaintiffs fail to state claims for breach of contract ......................22

    a.  Plaintiffs fail to establish that contracts with ...................22
      Ambit existed

    b.  Plaintiffs' assertions regarding the alleged .......................23
      contract's terms, performance and breach are
      legally insufficient.

  5.  Plaintiffs fail to state claims for unjust enrichment ......................24

  6.  Kasparov fails to state a claim for a promise causing...................25
    detrimental reliance.

III.  Conclusion ...........................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>                                                                           <u>**Page**</u>

*Acito v. IMCERA Group,* ...............................................................................14
    47 F.3d 47 (2d Cir. 1995)

*Ashcroft v. Iqbal,* ........................................................................................19
    556 U.S. 662 (2009)

*Atkinson v. Mobil Oil Corp.,* ........................................................................23
    614 N.Y.S.2d 36 (2d Dep't 1994)

*Baer v. United Servs. Auto Ass'n,* .................................................................3
    503 F.2d 393 (2d Cir. 1997)

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* .............................9
    305 F.3d 120 (2d Cir. 2002)

*Barkhorn v. Adlib Assocs.,* ............................................................................4
    345 F.2d 173 (9th Cir. 1965)

*Bell Atl. Corp. v. Twombly,* ...............................................................12, 13, 16,
    550 U.S. 544 (2007)                                                    17, 18, 19

*Broughel v. Battery Conservancy,* ..................................................................25
    N0. 07-cv-7755(GBD), 2009 WL 928280,
    (S.D.N.Y. Mar. 30, 2009)

*Burger King Corp. v. Rudzewicz,* ..................................................................10
    471 U.S. 462 (1985)

*Camofi Master LDC v. College Partnership, Inc.,* .........................................15
    452 F. Supp. 2d 462 (S.D.N.Y. 2006)

*Chanayil v. Gulati,* ......................................................................................13
    169 F.3d 168 (2d Cir. 1999)

*Chloe v. Queen Bee of Beverly Hills, LLC,* ..............................................8, 9, 10,
    616 F.3d 158 (2d Cir. 2010)                                              11

*Cohen v. Koenig,* ..........................................................................................13
    25 F.3d 1168 (2d Cir. 1994)

*Cucchiaro v. Cucchiaro*, ..................................................................................23
    627 N.Y.S.2d 224 (N.Y. Sup. 1995)

*Devaney v. Chester*, ......................................................................................15
    709 F. Supp. 1255 (S.D.N.Y. 1989)

*Dragon Inv. Co. II LLC v. Shanahan*, ...............................................................25
    854 N.Y.S.2d 115 (1st Dep't 2008)

*EBC I, Inc. v. Goldman Sachs & Co.*, .................................................................20
    5 N.Y.3d 11 (N.Y. 2005)

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, ...............................................14
    551 F. Supp. 2d 210 (S.D.N.Y.2008)

*In re Elevator Antitrust Litig.*, ........................................................................16
    502 F.3d 47 (2d Cir. 2007)

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, ......................13
    375 F.3d 168 (2d Cir. 2004)

*Eugenia VI Venture Holdings, Ltd. v. Glaser*, ......................................................20
    370 Fed. Appx. 197 (2d Cir. 2010)

*Everything Yogurt Brands, LLC v. M.A.R. Air Foods, Inc.*, ......................................7
    Civil Action No. 09–4847 (SRC), 2009 WL 3260629,
    (D.N.J. Oct. 9, 2009)

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, .......................................................3
    545 U.S. 546 (2005)

*Fifth Third Bank v. Flatrock 3, LLC*, ...............................................................4, 7
    No. 09-CV-06051 (DMC-JAD), 2010 WL 2998305,
    (D.N.J. July 21, 2010)

*Flickinger v. Harold C. Brown & Co.*, ...............................................................20
    947 F.2d 595 (2d Cir. 1991)

*Fort Knox Music Inc. v. Baptiste*, ....................................................................10
    203 F.3d 193 (2d Cir. 2000)

*Getty Oil Corp. v. Ins. Co. of N. Am.*, .................................................................4
    841 F.2d 1254 (5th Cir. 1988)

*Hall v. Bellmon*, .........................................................................................13
    935 F.2d 1106 (10th Cir. 1991)

*Handelsman v. Bedford Village Assocs. L.P.*,...............................................................5
    213 F.3d 48 (2d Cir. 2000)

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,.............................................11
    466 U.S. 408 (1984)

*Henneberry v. Sumitomo Corp. of Am.*, ...........................................................13, 14
    532 F. Supp. 2d 523 (S.D.N.Y. 2007)

*Herrick Co. v. SCS Commc'ns, Inc.*,...................................................................3
    251 F.3d 315 (2d Cir. 2001)

*Holly v. Deason,*...................................................................................15
    No. Civ. A. 3:02-CV-2598, 2005 WL 770595,
    at *9 (N.D. Tex. Mar. 31, 2005)

*JBARM, L.L.P. v. Mad River Post, Inc.*,.............................................................4
    No. 3:06-CV-2079-L, 2006 WL 3337354,
    (N.D. Tex. Nov. 16, 2006)

*Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG)(SMG),...............................................8, 9
    2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008).

*Kernan v. Kurz-Hastings,* ..........................................................................11, 12
    175 F.3d 236 (2d Cir. 1999)

*King County, Washington v. IKB Deutsche Industriebank AG,* ......................20, 21
    863 F. Supp. 2d 288 (S.D.N.Y. 2012)

*Learning Works, Inc. v. Learning Annex, Inc.*,.................................................15
    830 F.2d 541 (4th Cir. 1987)

*Lewis v. Allied Bronze LLC,* ........................................................................7
    No. 07 Civ. 1621(BMC), 2007 WL 1299251,
    (E.D.N.Y. May 2, 2007)

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,.......................................21
    767 F. Supp. 1220 (S.D.N.Y. 1991),
    *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992)

*Matson v. Bd. of Educ.,*..............................................................................6
    631 F.3d 57 (2d Cir. 2011)

*Maung Ng We v. Merrill Lynch & Co.*,...........................................................................22
 No. 99 CIV 9687(CSH), 2000 WL 1159835,
 (S.D.N.Y. Aug. 15, 2000)

*McNutt v. Gen. Motors Acceptance Corp.*,.......................................................................4
 298 U.S. 178 (1936)

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,...............................................8, 11
 84 F.3d 560 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006

*In re Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*,...............................20
 276 F.3d 123 (2d Cir. 2002)

*Muller-Paisner v. TIAA*,.................................................................................................20
 No. 03 Civ. 6265(GWG), 2012 WL 3205583,
 (S.D.N.Y. Aug. 9, 2012)

*Mullins v. Testamerica, Inc.*,............................................................................................4
 300 Fed. Appx. 259 (5th Cir. 2008)

*Nasso v. Seagal*,..............................................................................................................5
 263 F. Supp. 2d 596 (E.D.N.Y. 2003)

*Papasan v. Allain*,..........................................................................................................13
 478 U.S. 265 (1986)

*Perez v. Lopez*,..........................................................................................................16, 19
 948 N.Y.S.2d 312 (2d Dep't 2012)

*Porina v. Marward Shipping Co.*,......................................................................................8
 521 F.3d 122 (2d Cir. 2008)

*Pyr Energy Corp. v. Samson Res. Co.*,.............................................................................15
 No. 1:05-CV-530, 2007 WL 858804, at *2 (E.D. Tex. Mar. 19, 2007)

*Robbins v. Oklahoma*,.....................................................................................................19
 519 F.3d 1242 (10th Cir. 2008)

*Rock v. Rock*,..................................................................................................................25
 953 N.Y.S.2d 165 (2d Dep't 2012)

*Saltz v. First Frontier, LP*,........................................................................................13, 14
 782 F. Supp. 2d 61 (S.D.N.Y. 2010)

*Scott v. Fields*,................................................................................................................19
 925 N.Y.S.2d 135 (2d Dep't 2011)

*Sebastian Holding, Inc. v. Deutsche Bank AG,* ................................................................21
 78 A.D.3d 446 (1st Dep't 2010)

*Senese v. Hindle,* ..........................................................................................................8, 11
 No. 11-CV-0072, 2011 WL 4536955, at *5 (E.D.N.Y. Sept. 9, 2011)

*Sessing v. Gateway Ctr. Props., LLC,* ...............................................................................6
 No. 09 Civ. 2485 (BMC), 2009 WL 1918162,
 at *1 (E.D.N.Y. June 30, 2009)

*Shipping Fin. Servs. Corp. v. Drakos,* ..............................................................................3
 140 F.3d 129 (2d Cir. 1998)

*Sheikh v. York,* ...............................................................................................................4
 No. 11-cv-15533, 2012 WL 1004853, at *2 (E.D. Mich. Mar. 26, 2012)

*Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs.,* ...........................6, 7
 No. 08 cv 2568(BMC), 2008 WL 2697324 (E.D.N.Y. June 2, 2008)

*Spagnola v. Chubb Corp.,* ..............................................................................................22
 264 F.R.D. 76 (S.D.N.Y. 2010)

*Thermal Imaging, Inc. v. Sandgrain Secs., Inc.,* ..............................................................21
 158 F. Supp. 2d 335 (S.D.N.Y. 2001)

*Tuchman v. DSC Commc'ns Corp.,* ..................................................................................15
 14 F.3d 1061 (5th Cir. 1994)

*United States v. Simms,* ...................................................................................................18
 508 F. Supp. 1188 (W.D. La.1980)

*United States v. Townsend,* ..............................................................................................18
 924 F.2d 1385 (7th Cir.1991)

*Virtual Worlds, LLC v. Seaboard Int'l Energy Corp.,* .......................................................4
 No. CV 10-4432 PA (JCGx), 2010 WL 2553468,
 (C.D. Cal. June 18, 2010)

*In re Vitamins Antitrust Litig.,* ........................................................................................18
 320 F. Supp. 2d 1 (D.D.C. 2004)

*Williams v. Bell Helicopter Textron, Inc.,* ........................................................................15
 417 F.3d 450 (5th Cir. 2005)

## Federal Statutes

28 U.S.C. § 133(a) .............................................................................................3

## State Statutes

N.Y. C.P.L.R. § 302(a) ....................................................................................10

Tex. Bus. & Org. Code Ann. § 152.051 (Vernon 2011) ...................................5

Tex. Bus. & Org. Code Ann. §153.003 (Vernon 2011) ...................................5

Tex. Bus. & Org. Code Ann. § 153.101 (Vernon 2011) ...................................5

Tex. Bus. & Org. Code Ann. § 153.151 (Vernon 2011) ...................................5

## Federal Rules

Fed. R. Civ. P. 8...........................................................................................2, 12

Fed. R. Civ. P. 9(b) ..................................................................................2, 13, 15

Fed. R. Civ. P. 12(b)(1) ....................................................................................1

Fed. R. Civ. P. 12(b)(2) ...................................................................................1

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

Fed. R. Civ. P. 12(h)(3) ...................................................................................7

## I.      Summary of the Motion to Dismiss

In this case, Plaintiffs state that they are owed over $111 million in damages from Defendants for alleged injustices that Plaintiffs claimed to have suffered while working as Ambit's consultants.   But Plaintiffs have (1) failed to invoke this Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) failed to show that this Court may exercise personal jurisdiction over Defendants Chambless and Thompson under Rule 12(b)(2); and (3) failed to state a single valid claim for relief under Rule 12(b)(6).

First, this Court lacks subject-matter jurisdiction.   Plaintiffs' naked assertions of Defendants' citizenships "[u]pon information and belief" are fatally defective.   And the sole factual allegation supporting their jurisdictional allegations contradicts existing law.   Moreover, Plaintiffs have failed to identify the citizenship of all of Ambit Texas, LLC's ("Ambit") members—a requirement for showing a limited liability company's citizenship.   Plaintiffs cannot simply make defective jurisdictional allegations and hope that discovery will support them.

Second, this Court cannot exercise personal jurisdiction over Chambless and Thompson. The Complaint lacks facts regarding their minimum contacts.   What the Complaint does allege fails to show either specific or general jurisdiction.   Nor can it satisfy New York's long-arm statute.   Chambless and Thompson do not have the required minimum contacts with New York to warrant exercising personal jurisdiction, and such exercise would be unreasonable.

Third, none of Plaintiffs' causes of action states a valid claim for relief.   The promises concerning future conduct that Kasparov alleges in his fraud claim fail to constitute actionable fraud without facts showing Thompson's intent not to perform those promises when he made them.   Further, Kasparov fails to plead fraud with the particularity that Federal Rule of Civil

Procedure 9(b) requires.    Because Kasparov's fraud claim fails as a matter of law, his conclusory punitive damages claim fails as well.

Kasparov's conspiracy claim fails because he does not allege any facts suggesting that an unlawful agreement existed between Chambless and Thompson. Instead, he merely combines Thompson's alleged fraudulent acts and Chambless's lawful independent actions and labels it a "conspiracy." The lack of facts demonstrating an overt act in furtherance of the "conspiracy" further precludes the meeting of the minds that a conspiracy requires. Finally, Kasparov's invalid fraud claim nullifies his conspiracy claim dependent on the fraud.

In his breach-of-fiduciary-duty claim, Kasparov merely labels what is, on its face, nothing more than a business transaction far too attenuated to qualify as a fiduciary relationship. Nor does Kasparov's unilateral reliance on Thompson elevate their business relationship to a fiduciary one. In fact, Kasparov's own allegations describing the basis for his alleged fiduciary relationship with Thompson invert the requirements for creating a fiduciary duty. The fact that Kasparov allowed Thompson access to Kasparov's confidential information did not create a fiduciary duty.

Plaintiffs' breach-of-contract claims fail because the Complaint itself negates the agency theory on which the claims depend. Plaintiffs allege no facts to support that Thompson or any other Ambit consultant had actual or apparent authority to bind Ambit. And Ambit's Independent Consultant Agreement and Policies and Procedures—attached as Exhibits 2 and 3 to the Complaint—expressly disclaim any such agency relationship. Additionally, Plaintiffs violate Rule 8 by failing to adequately plead the terms of their alleged contracts with Ambit, their performance of those contracts, and Ambit's breaches.

Neither Kasparov nor Aleph Towers, LLC ("Aleph") can recover under an unjust

enrichment theory. Defendants' profit from Plaintiffs' work as consultants—in accordance with Ambit's business model alleged in the Complaint—is not unjust. Nor is Plaintiffs' own ignorance of Ambit's business plan misconduct on Defendants' part. And Plaintiffs' conclusory allegations about the benefits Defendants received fail to satisfy Rule 8.

Finally, Kasparov's claim for a "promise causing detrimental reliance"—presumably a promissory estoppel claim—fails because it depends on Kasparov's theory that Ambit's consultants are its agents. Defendants ask that this Court dismiss the Complaint with prejudice.

## II.    Argument and Authorities

### A.    This Court Lacks Subject-Matter Jurisdiction.

"[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[1]  So although courts must accept as true all material factual allegations in the complaint, they will not draw inferences favorable to the party asserting jurisdiction.[2]  As the party seeking to invoke this Court's jurisdiction, Plaintiffs bear the burden of demonstrating that this Court has subject-matter jurisdiction based on the facts existing when they filed the Complaint.[3]  Therefore, to survive dismissal for lack of subject-matter jurisdiction, the Complaint must allege facts sufficient to establish that both Plaintiffs are citizens of different states from all Defendants.[4]  On its face, the Complaint fails to do so.

### 1.    Allegations of citizenship based "upon information and belief" do not invoke diversity jurisdiction.

"Parties cannot confer jurisdiction on a federal court simply by expressing confidence in

---

[1] *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 321 (2d Cir. 2001).
[2] *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).
[3] *Herrick Co.*, 251 F.3d at 322-23.
[4] 28 U.S.C. § 1332(a); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553-54 (2005) ("Incomplete diversity destroys original jurisdiction with respect to all claims."); *Baer v. United Servs. Auto Ass'n*, 503 F.2d 393, 397 (2d Cir. 1997) ("Such a complaint, which on its face fails to negate the possibility that diversity does not exist, is defective.").

it."[5]  As the United States Supreme Court has mandated, jurisdiction cannot be maintained by "mere averment" but instead must be supported by "competent proof."[6]  "The basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."[7]  So statements alleging citizenship "to the best of [plaintiff's] knowledge" fall "manifestly short of distinctly and affirmatively" alleging citizenship.[8]  Accordingly, federal courts have repeatedly dismissed cases for lack of subject-matter jurisdiction where the plaintiffs have made such jurisdictional allegations based "upon information and belief."[9]

Here, too, Plaintiffs' allegations of Defendants' citizenship based "[u]pon information and belief" are fatal to subject-matter jurisdiction.  Plaintiffs allege that, "[u]pon information and belief, [Ambit] is a Texas limited liability company…"and "[u]pon information and belief, [Chambless]…is a citizen of the state of Texas…"and "[u]pon information and belief, [Thompon] is a citizen of the state of Texas…."[10]  The Complaint fails to affirmatively and distinctly allege a basis for diversity jurisdiction and therefore warrants dismissal.

## 2.    Plaintiffs' jurisdictional allegations fail on their face.

Plaintiffs' own explanation of why they think Ambit is a Texas citizen is illogical under

[5] *Mullins v. Testamerica, Inc.*, 300 Fed. Appx. 259, 260 (5th Cir. 2008) (citing *Barkhorn v. Adlib Assocs.*, 345 F.2d 173, 174 (9th Cir. 1965)).
[6] *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).
[7] *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).
[8] *Mullins*, 300 Fed. Appx. at 260.
[9] *Sheikh v. York*, No. 11-cv-15533, 2012 WL 1004853, at *2 (E.D. Mich. Mar. 26, 2012) (noting that plaintiff failed to plead the citizenship of an LLC because the plaintiff relied on information and belief regarding the LLC members); *Fifth Third Bank v. Flatrock 3, LLC*, No. 09-CV-06051 (DMC-JAD), 2010 WL 2998305, at *3 (D.N.J. July 21, 2010) (dismissing case for lack of subject-matter jurisdiction when plaintiff alleged citizenship of members of LLC "upon information and belief"); *Virtual Worlds, LLC v. Seaboard Int'l Energy Corp.*, No. CV 10-4432 PA (JCGx), 2010 WL 2553468, at *2 (C.D. Cal. June 18, 2010) (noting, on a removal petition, that defendant's allegation about plaintiff's citizenship on "information and belief" was insufficient to invoke court's diversity jurisdiction); *JBARM, L.L.P. v. Mad River Post, Inc.*, No. 3:06-CV-2079-L, 2006 WL 3337354, at *2 (N.D. Tex. Nov. 16, 2006) (finding that the "naked assertion" of citizenship based "[u]pon information and belief" was "insufficient to establish diversity" and remanding case back to state court).
[10] Complaint ¶¶ 7, 11, 13.

existing law.  Footnote 1 of the Complaint contains the sole basis for Plaintiffs' contention that

Ambit is a Texas citizen:

> Initially, the sole member of [Ambit] was Ambit Energy, L.P. The
> sole member of Ambit Energy, L.P., is Ambit GenPar, Inc. Thus,
> upon merger of [Ambit], the surviving entity, and Ambit Energy,
> L.P., Ambit GenPar, Inc., the sole partner of Ambit Energy, L.P.,
> became the sole member of [Ambit]. (Exhibit 1.)[11]

This explanation fails to support any basis for diversity jurisdiction.  A Texas limited

partnership such as Ambit's former member, Ambit Energy, L.P., does not have members.[12]  It

has general partners and limited partners.[13]  Yet Plaintiffs claim that the "sole *member* of Ambit

Energy, L.P. is Ambit GenPar, Inc."[14]  Further, Ambit Energy, L.P., as an alleged Texas limited

partnership, cannot have only one "member."   Partnerships by definition must have at least two

partners.[15]   The same is true for limited partnerships.[16]   Plaintiffs' nonsensical allegation

therefore cannot serve as "competent proof" of Ambit's citizenship.

Most  importantly,  however,  Plaintiffs'  attempt  to  identify  the  citizenship  of *one*  of

Ambit's members fails to adequately allege the citizenship of Ambit, a Texas limited liability

company.  For purposes of establishing diversity jurisdiction, a limited liability company is

deemed to have the citizenship of its members.[17]  So a plaintiff must specifically allege the

citizenship of each of a limited liability company's members to confirm complete diversity.[18]

Plaintiffs allege that Ambit GenPar, Inc. is the "sole member" of Ambit Energy, L.P. and

---

[11] *Id.* ¶ 10 n.1.
[12] *See* TEX. BUS. ORG. CODE ANN. §§ 153.101 (admission of limited partners), 153.151 (admission of general partners) (Vernon 2011).
[13] *See* TEX. BUS. ORG. CODE ANN. §§ 153.101, 153.151.
[14] Complaint ¶ 10 n.1 (emphasis added).
[15] *See* TEX. BUS. ORG. CODE ANN. § 152.051 (defining partnership as "an association of two or more persons to carry on a business for profit as owners") (emphasis added).
[16] *See* TEX. BUS. ORG. CODE ANN. § 153.003 (providing that, "in a case not provided for by this chapter [on limited partnerships] and the other limited partnership provisions, the provisions of Chapter 152 governing partnerships that are not limited partnerships and the rules of law and equity govern").
[17] *Handelsman v. Bedford Village Assocs. L.P.*, 213 F.3d 48, 51-52 (2d Cir. 2000).
[18] *See id.*; *Nasso v. Seagal*, 263 F. Supp. 2d 596, 605 n.14 (E.D.N.Y. 2003).

therefore became the "sole member" of Ambit by merger, citing Exhibit 1 of the Complaint.[19]
But Exhibit 1 identifies only "all *general* partners" of Ambit Energy, L.P.—Ambit GenPar, Inc.[20]
It does not identify any limited partners. So Ambit GenPar, Inc. cannot be Ambit Energy, L.P.'s
"sole [partner]" and therefore cannot be Ambit's "sole member." As a matter of fact, Ambit has
multiple members, the identity and citizenship of which the Complaint does not allege. This
defect is fatal for obtaining diversity jurisdiction.

### 3. Plaintiffs cannot use discovery to establish diversity of citizenship.

Nor can Plaintiffs use discovery to circumvent the jurisdictional pleading requirements.
Plaintiffs "have no vested right to diversity jurisdiction. It is a limited grant, narrowly construed,
available only to those who have sufficient facts to meet the confines of the power conferred by
the Constitution and defined by Congress."[21] Plaintiffs cannot simply hope that Ambit's
citizenship may prove diverse after discovery because Federal Rule of Civil Procedure 11
requires that factual allegations have evidentiary support.[22] Even Plaintiffs' attempt to plead
such facts "on information and belief"—which is by itself fatal to subject-matter jurisdiction—
"does not dilute the Rule 11 obligation in any way."[23] "The purpose of discovery is to obtain
information on disputed issues."[24] But diversity of citizenship is not a disputed issue—it either
exists or it does not. Jurisdictional discovery is not appropriate to help a plaintiff conduct the

---

[19] Complaint ¶ 10 n.1.
[20] Complaint Ex. 1 at 1 (emphasis added) (Doc. 18-1). On a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Matson v. Bd. of Educ.*, 631 F.3d 57, 62 (2d Cir. 2011).
[21] *Sourceone Healthcare Techs., Inc. v. Bensonhurst Imaging Assocs.*, No. 08 cv 2568(BMC), 2008 WL 2697324, at *3 (E.D.N.Y. June 2, 2008).
[22] *See Sessing v. Gateway Ctr. Props.*, LLC, No. 09 Civ. 2485 (BMC), 2009 WL 1918162, at *1 (E.D.N.Y. June 30, 2009).
[23] *Sourceone*, 2008 WL 2697324, at *2.
[24] *Id.* at *1.

Rule 11 investigation it should have performed before filing a complaint.[25]

Moreover, if the Court permits jurisdictional discovery, it must necessarily exercise limited subject-matter jurisdiction in an action over which it may not have subject-matter jurisdiction.[26]   Such authority contradicts Federal Rule of Civil Procedure 12(h)(3), which imposes a continuing obligation on federal courts to dismiss the action "[i]f the court determines at any time that it lacks subject-matter jurisdiction."[27]

Finally, forcing Defendants to produce information establishing whether diversity jurisdiction exists would saddle Defendants—and this Court—with a burden they do not have. Defendants have no obligation to do Plaintiffs' work for them.[28]   Nor does this Court have an obligation to use its resources to supervise such discovery.   Accordingly, subject-matter jurisdiction discovery is the "kind of jurisdictional discovery that the Third Circuit has held to be unnecessarily burdensome...."[29]   Here, too, allowing Plaintiffs to use discovery in lieu of the pre-filing investigation that Rule 11 requires is "unnecessarily burdensome."   Plaintiffs' failure to adequately allege diversity jurisdiction warrants dismissal.

**B.      This Court Cannot Exercise Personal Jurisdiction Over Chambless and Thompson.**

   **1.      Plaintiffs fail to satisfy their burden to make a prima face showing of personal jurisdiction over Chambless and Thompson.**

Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that this

---

[25] *See id.* at *2 (denying plaintiff's request to conduct discovery to establish subject-matter jurisdiction when plaintiff had no facts to back up its jurisdictional allegation and noting that "[t]he requirement of a good faith basis is no less applicable to jurisdictional facts than any other facts. Indeed, because jurisdiction is the building block upon which the entire case must rest, it is particularly important that plaintiffs have a sound factual basis for invoking it.").

[26] *Fifth Third Bank v. Flatrock 3, LLC*, No. 09-CV-06051 (DMC-JAD), 2010 WL 2998305, at *4 n.4 (D.N.J. July 21, 2010).

[27] FED. R. CIV. P. 12(h)(3).

[28] *See Lewis v. Allied Bronze LLC*, No. 07 Civ. 1621(BMC), 2007 WL 1299251, at *2 (E.D.N.Y. May 2, 2007) (noting that "defense counsel has no obligation to provide such information [regarding defendant's citizenship] and may be unable or unwilling to do so....")

[29] *Everything Yogurt Brands, LLC v. M.A.R. Air Foods, Inc.*,  Civil Action No. 09–4847 (SRC), 2009 WL 3260629, at *2 (D.N.J. Oct. 9, 2009).

Court has personal jurisdiction over Defendants.[30]   Where a court chooses not to conduct a "full-blown evidentiary hearing," a plaintiff must make a prima facie showing of personal jurisdiction.[31]   That showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over" the defendants.[32]   But "a plaintiff's proffer of 'some evidence' is not sufficient; rather [such allegations must be] sufficient in themselves to establish jurisdiction."[33]   So "[c]onclusory allegations showing the presence of jurisdiction, particularly those stated only upon 'information and belief,' are insufficient to establish…personal jurisdiction over the defendant."[34]

Such insufficient assertions of personal jurisdiction are exactly what Plaintiffs allege here.  The identical allegations of personal jurisdiction over Chambless and Thompson amount to nothing more than conclusory labels and legal conclusions couched as factual allegations:

> The Court has personal jurisdiction over Chambless [and Thompson] in that, among other things, Chambless [and Thompson], upon information and belief, has committed tortious acts within and/or without New York causing injury to the Plaintiffs; should have reasonably expected the tortious acts to have consequences in New York; and has been deriving substantial revenue from services rendered in New York.[35]

These allegations do not come close to making a prima facie showing of personal jurisdiction over Chambless and Thompson.  They offer no facts describing what "tortious acts" Chambless and Thompson allegedly committed in New York or why Chambless and Thompson "should have reasonably expected" the unspecified "tortious acts to have consequences in New York."  Nor can Plaintiffs' non-specific fraud, conspiracy, or breach-of-fiduciary-duty assertions

---

[30] *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006.
[31] *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).
[32] *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).
[33] *Senese v. Hindle*, No. 11-CV-0072, 2011 WL 4536955, at *5 (E.D.N.Y. Sept. 9, 2011)
[34] *Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG)(SMG), 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008).
[35] Complaint ¶¶ 18-19.

later in the Complaint supplement these jurisdictional allegations when those assertions are generally stated, unsupported, and therefore insufficient as a matter of law.[36]  Further, the mere assertion that Chambless and Thompson "have been deriving substantial revenue from services rendered in New York" fails to specify what that revenue is, where it came from, or even the estimated amount.[37]  These deficient allegations cannot warrant this Court's exercise of personal jurisdiction over Chambless and Thompson.[38]

### 2.      Personal jurisdiction does not exist over Chambless and Thompson.

Personal jurisdiction does not exist over Chambless and Thompson.  In diversity cases, in order to determine whether it has personal jurisdiction, a court must undertake a two-step analysis.[39]  First, the court evaluates whether New York's long-arm statute would confer upon its courts the jurisdiction to reach individual defendants.[40]  If a statutory basis for personal jurisdiction exists, the court must then determine whether New York's exercise of personal jurisdiction in such a case would comport with the Due Process Clause of the Fourteenth Amendment.[41]

### a.      New York's long-arm statute would not permit the assertion of personal jurisdiction.

New York's long-arm statute permits the exercise of personal jurisdiction over any non-domiciliary who in person or through an agent transacts business, owns

---

[36] *See, infra*, discussion in §§ C(1)-(3).  *See* Complaint ¶¶ 180-205.
[37] Complaint ¶¶ 18-19.  *See Jin*, 2008 WL 896192, at *2 (dismissing pleading that "simply phrased legal conclusions as statements of fact," such as the assertion that defendant "derived substantial revenue" from services performed in New York).
[38] In fact, the Honorable Allyne R. Ross for the Eastern District of New York has dismissed a similar case against Chris Chambless for lack of personal jurisdiction, among other grounds.  *See* Order Granting Motion to Dismiss in *BH Seven, LLC v. Ambit Energy, L.P., Jere W. Thompson, and Chris Chambless*, No. 11-CV-2483, in the United States District Court for the Eastern District of New York, at 10  (Doc. 39).
[39] *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).
[40] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).
[41] *Id.*

real estate, or commits a tort within the state.[42]  The statute permits jurisdiction only over a defendant who has "purposefully availed himself of the privilege of conducting activities within New York and thereby invok[ed] the benefits and protections of its laws."[43]

As explained above, the legal conclusions comprising Plaintiffs' personal-jurisdiction allegations offer no facts demonstrating whether Chambless or Thompson owns, uses, or possesses any real property within New York or has personally transacted business in New York. Nor do the allegations describe a tortious act of either of them—Plaintiffs' assertions of fraud, conspiracy, and breach of fiduciary duty later in the Complaint are plainly insufficient.[44]

> **b.**      **Exercising personal jurisdiction over Chambless and Thompson does not comport with the Due Process Clause.**  The assertion of personal jurisdiction does not comport with the Due Process Clause.  To satisfy the Due Process Clause: (1) Chambless and Thompson must have purposefully availed themselves of the benefits and protections of the State of New York by establishing minimum contacts with New York; and (2) the application of personal jurisdiction must be reasonable.[45]  To show purposeful availment by minimum contacts, such that Chambless and Thompson should "reasonably anticipate" being "haled" into court in New York, there must be either specific or general jurisdiction over them.[46]

Specific jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.[47]  The defendant must have done at least something relating directly to the suit in the forum, and it must be more

---

[42] See N.Y. C.P.L.R. § 302(a).
[43] Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000).
[44] See, infra, discussion in §§ C(1)-(3).  See Complaint ¶¶ 180-205.
[45] See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).
[46] See id. at 164 (noting that such contacts cannot be random, fortuitous, or attenuated); Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).
[47] Chloe, 616 F.3d at 164.

than *de minimis* activity.[48]   The only action that Plaintiffs specifically allege Chambless and Thompson took in New York is to have dinner with Kasparov.[49]   Plaintiffs do not specify whether Thompson made any of the alleged misrepresentations or entered into any agreement during this dinner or even in New York.   Other than a dinner in New York with Kasparov, Plaintiffs do not allege that any of Chambless or Thompson's actions relevant to this lawsuit took place in New York.   Specific jurisdiction does not exist over them.

General jurisdiction is based on a defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.[50]   "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'"[51]   Plaintiffs have failed to allege any facts whatsoever that establish either Chambless or Thompson's general, continuous, and systematic business contacts with New York.   In fact, Chambless and Thompson lack sufficient contacts with New York.[52]

    c. **Exercising personal jurisdiction over Chambless and Thompson would be unreasonable.**   Even if the Court held that the minimum-contacts requirements were satisfied, the Court must still determine "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circumstances of the particular case.[53]   As part of this analysis, courts consider the following factors: (1) the burden that the exercise of jurisdiction will impose on the defendant;

---

[48] *Senese v. Hindle*, No. 11-CV-0072, 2011 WL 4536955, at *5 (E.D.N.Y. Sept. 9, 2011) (slip copy).
[49] Complaint ¶ 35.
[50] *Chloe*, 616 F.3d at 164.
[51] *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).
[52] *See* Declaration of Robert Stephen Thompson; Declaration of Chris Chambless.
[53] *Kernan v. Kurz-Hastings*, 175 F.3d 236, 243 (2d Cir. 1999).

(2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[54]

All of these factors weigh against exercising personal jurisdiction over Chambless and Thompson. First, the burden of exercising jurisdiction over them will be substantial. Neither of them lives in or regularly travels to New York.[55] Second, New York's interest in adjudicating this case between two Texas Defendants and New York Plaintiffs is no greater than Texas's interest in doing so. Third, while Plaintiffs may have some interest in obtaining convenient and effective relief close by, no obstacle stands in the way of accomplishing the same in Texas. Fourth, the most efficient resolution of the controversy between Plaintiffs and Chambless and Thompson—if it survives dismissal—does not favor New York. Chambless and Thompson have no significant interaction with New York.[56] Finally, the shared interest of the states in furthering fundamental social policies weighs against exercising personal jurisdiction. New York's interest in litigating this dispute is limited to Plaintiffs' residency in New York. Defendants therefore ask that the Court dismiss the Complaint for lack of personal jurisdiction.

## C.   Plaintiffs Fail to State Claims for Which This Court Can Grant Relief.

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[57] A plaintiff's complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face."[58] Accordingly, "a plaintiff's obligation to provide the "grounds" of his "entitlement to relief

---

[54] *Id.*
[55] *See* Declaration of Robert Stephen Thompson; Declaration of Chris Chambless.
[56] *See id.*
[57] Fed. R. Civ. P. 8(a)(2).
[58] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[59] Furthermore, although courts must accept all factual allegations as true, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."[60] The burden, therefore, rests on the plaintiff to provide a complaint with "enough factual matter (taken as true) to suggest that [the plaintiff] is entitled to relief."[61]

## 1. Kasparov fails to state a claim for fraud and deceit.

a. **Kasparov fails to supply facts supporting a "strong inference" of intent to defraud.** To prove a fraud claim under New York law, a plaintiff must show (1) a representation of material fact; (2) falsity of that representation; (3) an intent to defraud thereby; (4) reasonable reliance on the representation; and (5) damages.[62] The failure to fulfill a promise to perform future acts is not grounds for a fraud action unless there existed an intent not to perform the promise at the time the promise was made.[63] But the plaintiff must provide factual allegations showing that the defendant did not intend to perform the promises when he made them.[64] And under Federal Rule of Civil Procedure 9(b), those factual allegations must "give rise to a strong inference" of intent to defraud.[65] "In order to raise a strong inference of scienter through 'motive and opportunity' to defraud, Plaintiffs must allege that [defendant] or its officers 'benefited in some concrete and personal way from the purported fraud.' "[66] And although fraud may be pleaded on information and belief "when facts are peculiarly within the defendant's knowledge," the plaintiff still must state facts upon which his belief is founded, and which

---

[59] *Id.*

[60] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[61] *Twombly*, 550 U.S. at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[62] *Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999).

[63] *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

[64] *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 545 (S.D.N.Y. 2007).

[65] *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

[66] *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010).

support a "strong inference"of fraud.[67]

> In this case, Kasparov alleges that Thompson made misrepresentations concerning future conduct but fails to supply facts supporting a "strong inference" of Thompson's intent:

>> Thompson misrepresented to Kasparov that Thompson *was intending* and *would optimize* Kasparov's downline in Kasparov's best interest and for Kasparov's benefit.[68]

>> "Upon information and belief, Thompson intended to arrange Kasparov's downline to Thompson's own benefit at the time he was misrepresenting that fact to Kasparov, and therefore knew that his representation to Kasparov was false.[69]

Although Kasparov baldly asserts that Thompson intended not to perform his alleged promise when he made it, the sparse facts concerning Thompson's intent do not support, much less even suggest, a "strong inference" of fraud. Kasparov alleges only other people's reactions about Thompson. For example, Kasparov claims that, when he complained to Chambless of Thompson's alleged conduct, "Chambless did not seem to be surprised at all."[70] Similarly, another Ambit officer purportedly told Kasparov that "he had heard similar complaints about Thompson...."[71] Such allegations fail to specify any intent regarding Thompson's interactions with Kasparov. Nor do allegations that Thompson had the motive to profit from Kasparov suffice.[72] Indeed, according to the Complaint, profiting from consultants in one's downline is exactly how the MLM business works.[73] In effect, the only alleged "evidence" of Thompson's

---

[67] *Henneberry*, 532 F. Supp. 2d at 546.

[68] Complaint ¶ 181 (emphasis added).

[69] *Id.* ¶ 182.

[70] *Id.* ¶ 70.

[71] *Id.* ¶ 72.

[72] *See Saltz*, 782 F. Supp. 2d at 72 (explaining that the desire to earn industry-standard fees is not evidence of motive for purposes of establishing intent to defraud). *See also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir.1995) (where executive compensation is dependent upon stock value, motive to keep stock price high does not give rise to strong inference of scienter); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y.2008) ("The desire to earn management fees is a motive generally possessed by hedge fund managers, and as such, does not suffice to allege a "concrete and personal benefit" resulting from fraud.").

[73] *See* Complaint ¶¶ 20-28.

intent to defraud is simply that Thompson did not fulfill his promises, which is not actionable fraud.[74] Kasparov's fraud claim therefore fails as a matter of law.

> **b.      Kasparov fails to plead fraud with the particularity that Rule 9(b) requires.**   Kasparov's fraud claim further fails because it does not satisfy Rule 9(b)'s particularity requirement.   At a minimum, Rule 9(b) requires Plaintiff to plead the "who, what, when, where, or how" of the alleged fraud.[75]   Moreover, although Rule 9(b) allows general assertions of malice, intent, and knowledge, the rule still requires "specific facts to support an inference of fraud."[76]   And a plaintiff must plead reasonable reliance with particularity.[77]

Kasparov's fraud claim fails this heightened pleading requirement.   First, Kasparov does not allege when or where Thompson allegedly made the false representations.   And as to Chambless, Kasparov does not plead any facts at all suggesting circumstances constituting fraud.[78]   Second, as explained above, Kasparov makes only general allegations regarding Thompson's intent.[79]   Kasparov does not allege Chambless's intent at all, and Kasparov's bald allegation of Chambless's knowledge of Thompson's "acts" does not even suggest fraud.[80]   Third, Kasparov does not even *generally* plead reasonable reliance.   Instead, he claims only that his "reliance on Thompson's misrepresentation was *not unjustifiable*, as it is rather common in the MLM industry to provide continuous help and support to those one (sic) signs up."[81]   This allegation does not even affirmatively allege reasonable reliance.   And Kasparov's comment that

---

[74] *Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp. 2d 462, 481 (S.D.N.Y. 2006) ("A mere unfulfilled promise cannot form the basis of fraud unless it was "made with the preconceived and undisclosed intention that [it] will not be performed.").

[75] *Williams v. Bel, Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *Holly v. Deason*, No. Civ. A. 3:02-CV-2598, 2005 WL 770595, at *9 (N.D. Tex. Mar. 31, 2005).

[76] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994); *Pyr Energy Corp. v. Samson Res. Co.*, No. 1:05-CV-530, 2007 WL 858804, at *2 (E.D. Tex. Mar. 19, 2007).

[77] *See, e.g., Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987); *Devaney v. Chester*, 709 F. Supp. 1255, 1264 (S.D.N.Y. 1989).

[78] *See* Complaint ¶¶ 73, 74, 185, 187.

[79] *See, supra*, discussion in § C(1)(a).

[80] *See* Complaint ¶ 185.

[81] *Id.* ¶ 184 (emphasis added).

"it is common in the MLM industry" to help other consultants does not by itself demonstrate with particularity how Kasparov's reliance on the alleged promises Thompson made was reasonable. As a result, Kasparov fails to state an actionable fraud claim.

> c.   **Kasparov's legally insufficient fraud claim invalidates his punitive damages request.** Kasparov's punitive damages request fails for two reasons. First, Kasparov bases his punitive damages request on his fraud claim.[82] But for the reasons explained above, his fraud claim is insufficient.[83] Without a valid fraud claim as the predicate for his punitive damages request, Kasparov cannot recover punitive damages. Second, Kasparov does not describe what conduct Defendants allegedly committed that amounts to acting "intentionally, willfully [or] with reckless disregard," which is legally insufficient.[84] And as explained above, the few facts Kasparov does allege cannot support his conclusory assertions. Kasparov therefore cannot recover punitive damages.

> 2.   **Kasparov fails to state a claim for conspiracy.**

> > a.   **The Complaint does not suggest an illegal agreement between Chambless and Thompson.** To plead civil conspiracy, the plaintiff must allege (1) a cognizable tort; (2) coupled with an agreement between the conspirators regarding the tort; and (3) an overt act in furtherance of the agreement.[85] Regarding the agreement, a plaintiff must allege "enough factual matter (taken as true) to suggest that an [illegal] agreement was made."[86] The factual allegations cannot merely be consistent with the existence of an illegal agreement; rather, the allegations must plausibly suggest that an illegal agreement existed.[87] Accordingly, allegations

---

[82] *Id.* ¶ 192.
[83] *See, supra,* discussion in § C(1)(a)-(b).
[84] *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).
[85] *Perez v. Lopez,* 948 N.Y.S.2d 312, 314 (2d Dep't 2012).
[86] *Twombly,* 550 U.S. at 556; *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007).
[87] *Twombly,* 550 U.S. at 556-57.

of defendants' parallel conduct or lawful independent actions combined with a bare assertion of a conspiracy fail to suggest an agreement.[88]   Absent factual allegations "pointing towards a meeting of the minds," a defendant's business conduct "stays in neutral territory."[89]

Here, Kasparov asserts his fraud claim as the underlying tort.[90]  But he alleges no facts "pointing towards a meeting of the minds" to commit fraud.  What he does allege are merely Thompson and Chambless's independent actions, Chambless's knowledge of Thompson's actions, and Chambless's benefit from Thompson's fraud:

- "…Thompson introduced Kasparov to Chambless."[91]

- "…Chambless was personally persuading Kasparov to join Ambit…."[92]

- "Chambless responded that Kasparov had no reasons to worry about [learning Ambit's business plan], as Thompson would take care of optimizing Kasparov's downline, and he himself, Chambless, would also take care of that issue if needed."[93]

- Thompson made certain promises to Kasparov "in the presence of Chambless, who also suggested to Kasparov that Kasparov would be better off signing up under Thompson."[94]

- When Thompson complained to Chambless of Thompson's conduct, "Chambless did not seem to be surprised at all."[95]

- "Chambless agreed with Kasparov that he worked for free for half a year for Thompson and suggested that Kasparov would start working then…for himself."[96]

- "Upon information and belief, Chambless was aware that Thompson was arranging Kasparov's downline and that Thompson was optimizing it for his own, rather than for Kasparov's, benefit."[97]

---

[88] *See id.*
[89] *Id.* at 557.
[90] Complaint ¶ 194.
[91] *Id.* ¶ 35.
[92] *Id.* ¶ 36.
[93] *Id.* ¶ 38.
[94] *Id.* ¶ 48.
[95] *Id.* ¶ 70.
[96] *Id.* ¶ 71.
[97] *Id.* ¶ 73.

- "Upon information and belief, Thompson shared with Chambless the benefits he derived from configuring Kasparov's downline for his own benefit."[98]

These allegations do not show any illegal agreement—or any agreement at all—between Thompson and Chambless to defraud Kasparov. Chambless and Thompson's "parallel conduct" fails on its face to show any agreement.[99] Nor does Chambless's mere knowledge of Thompson's alleged acts demonstrate any agreement, as knowledge alone fails to "point towards a meeting of the minds."[100] The same is true for the assertion that Thompson's independent actions financially benefitted Chambless.[101] Moreover, Kasparov offers no facts supporting his naked assertion that Thompson "shared" his profits with Chambless.[102]

Further, Kasparov's conspiracy claim based on the above-enumerated allegations reveals only legal labels:

- "Upon information and belief, there was a *corrupt agreement* to defraud Kasparov between Thompson and Chambless."[103]

- "Upon information and belief, Chambless granted Thompson access to Ambit's system in order to arrange Kasparov's downline *in accordance with the defendants' plans*, or, alternatively, did the arrangement himself."[104]

- "Defendants Thompson and Chambless, upon information and belief, *acted intentionally and knowingly in furtherance of their purpose*."[105]

These allegations simply stamp a conspiracy label on Thompson and Chambless's independent conduct and Chambless's knowledge of Thompson's conduct. In *Twombly*, the

---

[98] *Id.* ¶ 74.
[99] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).
[100] *See In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 16 (D.D.C. 2004) ("Knowledge alone is not sufficient to prove that any particular Defendant intended to join the all-vitamins conspiracy"); *United States v. Townsend,* 924 F.2d 1385, 1391 (7th Cir.1991) (mere knowledge not enough to "tie the conspiracy together"); *United States v. Simms,* 508 F. Supp. 1188, 1198 (W.D. La.1980) (mere knowledge of object or purpose, "without the intention and agreement to cooperate" not sufficient).
[101] *See* Complaint ¶¶ 20-28.
[102] *See Twombly*, 550 U.S. at 556-57.
[103] Complaint ¶ 195 (emphasis added).
[104] *Id.* ¶ 196 (emphasis added).
[105] *Id.* ¶ 197 (emphasis added).

Supreme Court expressly criticized "complaints that mentioned no specific time, place, or person involved in the alleged conspiracies."[106]  And a "conclusory allegation of an agreement at some unidentified point does not supply facts adequate to show illegality."[107]  Although Kasparov alleges an agreement "at some unidentified point," the Complaint never even hints at when, where, or how this alleged agreement began.

Moreover, the fact that Kasparov fails to allege an overt act in furtherance of the conspiracy—a required element for stating a conspiracy claim[108]—further renders any illegal agreement implausible.  The closest Kasparov comes to suggesting an overt act is his naked allegation "[u]pon information and belief" that "Chambless granted Thompson access to Ambit's system in order to arrange Kasparov's downline in accordance with the defendants' plans, or, alternatively, did the arrangement himself."[109]  But there are no facts supporting this allegation.  And even if Chambless did grant Thompson access to Ambit's system, Kasparov does not specify Chambless and Thompson's alleged "plans."  Nor does Chambless's act of granting Thompson—an Ambit consultant—access to Ambit's system even suggest an illegal agreement.

      **b.**    **Kasparov's conspiracy claim falls with his fraud claim.**  Because Kasparov's fraud claim fails as a matter of law, his conspiracy claim must fail as well.  New York does not recognize civil conspiracy to commit a tort as an independent cause of action.[110]  Instead, a civil conspiracy claim "stands or falls with the underlying tort."[111]  So the fact that Kasparov's fraud claim cannot survive renders his conspiracy claim invalid for that reason alone.

---

[106] *Twombly*, 550 U.S. at 564 n.10; *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).
[107] *Twombly*, 550 U.S. at 557.
[108] *See Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (2d Dep't 2012).
[109] Complaint ¶ 196.
[110] *Scott v. Fields*, 925 N.Y.S.2d 135, 137 (2d Dep't 2011).
[111] *Id.*

### 3.    Kasparov fails to state a claim for breach of fiduciary duty.

To prove a breach of a fiduciary duty, a plaintiff must demonstrate (1) a breach by a fiduciary of a duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages.[112]  A fiduciary relationship exists when one person "is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."[113] Such a relationship "must exhibit the characteristics of 'de facto control and dominance.'"[114]  It is fact specific and grounded in a "higher level of trust than normally is present in the marketplace in an arms-length business transaction."[115]

In this case, the Complaint fails to demonstrate that any fiduciary relationship existed between Kasparov and Thompson.  Kasparov alleges that Thompson became his fiduciary "[b]y undertaking upon himself to arrange Kasparov's downline for Kasparov, as Kasparov's consideration to join Thompson's downline...."[116]  First, this allegation on its face reflects nothing more than, at most, a business relationship.  A fiduciary relationship cannot exist where parties are involved in a mere arm's-length commercial transaction.[117]  What Kasparov alleges merely shows a transactional relation between Kasparov and Thompson: Thompson agreed to construct Kasparov's downline if Kasparov signed up in Thompson's downline.[118]  Kasparov does not explain why such an arrangement is a "relationship of trust and confidence" or how Thompson controlled or dominated Kasparov.  In fact, the Complaint characterizes Kasparov as a sophisticated player in the MLM industry, having a "reputation, strong network, and

---

[112] *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed. Appx. 197, 199 (2d Cir. 2010).
[113] *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991).
[114] *King County, Washington v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012).
[115] *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (N.Y. 2005).
[116] Complaint ¶ 201.
[117] *Muller-Paisner v. TIAA*, No. 03 Civ. 6265(GWG), 2012 WL 3205583, at *12 (S.D.N.Y. Aug. 9, 2012).  *See also In re Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances").
[118] *See* Complaint ¶ 201.

popularity" and being "well known in the MLM community."[119]   This claimed sophistication further renders his allegation of a fiduciary relationship with Thompson implausible.[120]

Second, Kasparov's reliance on that expertise does not demonstrate a fiduciary relationship.  "Mere reposal of one's trust or confidence in a party…does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well."[121]   Kasparov alleges no facts showing that Thompson accepted Kasparov's trust or confidence.  Configuring Kasparov's downline cannot by itself show that acceptance.

Third, permitting Thompson to access Kasparov's downline could not create a fiduciary relationship.  The fiduciary relationship must predate the acquisition of the knowledge.[122]   "[T]he relationship must inspire the disclosure—it may not 'merely emerge from the revelation's wake.'"[123]   Kasparov appears to suggest that Thompson's access to Kasparov's downline created a fiduciary duty: "[b]y undertaking upon himself to arrange Kasparov's downline for Kasparov…Thompson became Kasparov's fiduciary…."[124]   But Thompson could have owed Kasparov a fiduciary duty only if a fiduciary relationship existed before that alleged undertaking.[125]   Kasparov's own allegations of the creation of a fiduciary relationship render its existence impossible under existing law.

---

[119] *Id.* ¶¶ 29 & 30.
[120] *See Sebastian Holding, Inc. v. Deutsche Bank AG*, 78 A.D.3d 446, 447 (1st Dep't 2010) ("Plaintiff's alleged reliance on defendant's superior knowledge and expertise…ignores the reality that the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities that do not give rise to fiduciary duties.").
[121] *Thermal Imaging, Inc. v. Sandgrain Secs., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).
[122] *Id.*
[123] *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1232 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992).
[124] Complaint ¶ 201.
[125] *See Thermal Imaging*, 158 F. Supp. 2d at 343; *see King County, Washington v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 299 (S.D.N.Y. 2012) (explaining that "there can be no claim for breach of fiduciary duty unless a fiduciary relationship existed *prior* to the transaction giving rise to the alleged wrong.") (emphasis in original).

4.      **Plaintiffs fail to state claims for breach of contract.**

a.      **Plaintiffs fail to establish that contracts with Ambit existed.** Kasparov
and Aleph both conclusively claim that they entered into contracts to become Ambit's
consultants based on an agency theory.[126] But even at the pleading stage, "[a plaintiff] must do
more than state the legal conclusion that [a subsidiary] was the defendants' agent, it must plead
facts that support a finding that such agency existed."[127]  Plaintiffs, however, fail to plead such
facts.  Instead, they allege that Ambit consultants had binding authority to enter into agreements
on Ambit's behalf simply due to the nature of the MLM business.[128]  They further assert that
Ambit's silence qualifies as ratification of contracts entered into by consultants.[129]

But Plaintiffs do not explain how Ambit consultants have actual or apparent authority to
bind Ambit.  Actual authority requires a *direct manifestation by the principal to the agent* that
the agent shall act for him.[130]  To adequately plead the existence of apparent authority, a plaintiff
must allege *words or conduct of the principal, communicated to a third party*, that gives rise to
the appearance and belief that the agent possesses authority to enter into a transaction on behalf
of the principal.[131]  General allegations of the nature of the MLM business do not supply facts
that, if believed, demonstrate either (1) a direct manifestation by Ambit to Chambless,
Thompson, or any Ambit consultant that they could act for Ambit; or (2) Ambit's words or
conduct communicated to Plaintiffs showing that the Ambit consultants possess the authority to

---

[126] Complaint ¶¶ 214, 225.
[127] *Maung Ng We v. Merrill Lynch & Co.*, No. 99 CIV 9687(CSH), 2000 WL 1159835, at *5-*6 (S.D.N.Y. Aug. 15, 2000).  *See also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 88 (S.D.N.Y. 2010) ("[C]ourts routinely dismiss claims based on agency theory where such pleadings contain insufficient allegations in that regard.").
[128] *See* Complaint ¶ 31 ("It is a basic core practice in any MLM business, and in Ambit in particular, for consultants to have authority to sign up other consultants, thus executing valid agreements with the consultants on behalf of the MLM business...."); ¶ 32 ("Without such authority of consultants, any MLM business, including Ambit, simply would not be able to grow.").
[129] *Id.* ¶ 33 ("In any case, by not cancelling membership of a particular consultant within reasonable time, an MLM business ratifies and confirms the authority of a consultant signing up the new consultant and entering with the new consultant into a binding agreement on behalf of the MLM business, Ambit in this case.").
[130] *Spagnola*, 264 F.R.D. at 89.
[131] *Id.* at 90.

enter into contracts on Ambit's behalf. Nor can Ambit's mere silence constitute ratification absent an allegation that Ambit knew of the alleged contracts.[132]

And the Complaint itself negates any agency relationship between Ambit and its consultants. Plaintiffs attach to the Complaint as Exhibits 2 and 3 Ambit's Standard Consultant Application and Agreement and Ambit's Policies and Procedures. Both expressly disclaim any agency relationship between Ambit and its consultants.[133]

**b.** **Plaintiffs' assertions regarding the alleged contracts' terms, performance, and breach are legally insufficient.** Plaintiffs allege nothing more than conclusory statements regarding the contracts' terms. To plead a breach-of-contract claim, a complaint must allege the provisions of the contract upon which the claim is based.[134] Plaintiffs, however, allege only that they "agreed to become Ambit's consultant[s], MC at the time" and that Ambit agreed to compensate them "in accordance with the Ambit standard compensation plan."[135] Plaintiffs do not explain their duties or obligations as consultants. Nor do Plaintiffs identify *any* specifics with regard to "the Ambit standard compensation plan."[136] They purport to attach as an exhibit "Ambit's Standard Compensation Plan, contained in Ambit's Standard Business Presentation,"[137] but this copy of a powerpoint presentation contains only pictures and general information.[138] It does not describe how Ambit allegedly agreed to pay Plaintiffs. Plaintiffs' breach-of-contract claims thus fail.

Further, Plaintiffs offer no specific facts regarding their performance. They simply allege

---

[132] *See Cucchiaro v. Cucchiaro*, 627 N.Y.S.2d 224, 231 (N.Y. Sup. 1995) ("ratification is the affirmance of an avoidable agreement by silence or inaction with knowledge of one's rights.").
[133] *See* Complaint, Ex. 2 at 1 (Doc. 18-2); Ex. 3 at 13 (Doc. 18-3).
[134] *Atkinson v. Mobil Oil Corp.*, 614 N.Y.S.2d 36, 36 (2d Dep't 1994).
[135] Complaint ¶¶ 214 & 225.
[136] *See id.* ¶¶ 50, 214, 225.
[137] *Id.* ¶ 50.
[138] *See id.*, Ex. 4 (Doc. 18-4).

that they "performed in accordance with" their contracts.[139]   Kasparov does not explain how signing up consultants constitutes performance of his contract.[140]   Aleph supplies no facts describing its performance.

Finally, Plaintiffs do not adequately plead breach of the contracts because they fail to connect Ambit's alleged misconduct to specific contractual provisions.  Plaintiffs label a number of vaguely described wrongs as breaches—that Ambit "underpaid" them, "unjustifiably cancelled membership of consultants and/or customers," *etc.*—but do not explain how those wrongs breached terms of the contracts.[141]  This shortfall is fatal.

### 5. Plaintiffs fail to state claims for unjust enrichment.

The face of the Complaint shows that Defendants' alleged enrichment was not unjust. The benefits that Defendants supposedly received—"making presentations; signing up consultants and customers; helping the consultants in [Plaintiffs'] downline[s]; promoting Ambit business; and otherwise working to help growing (sic) Ambit's profits"—are not on their face unjust.[142]  The Complaint itself contends that an MLM company is based on consultants profiting from other consultants (and customers) and the MLM company profiting from the consultants.[143] A capitalistic enterprise does not by itself equate to unjust enrichment.

The same logic applies to Plaintiffs' complaint that they thought they were working for themselves when they were in fact working for Defendants.[144]   Plaintiffs' own ignorance of

---

[139] *Id.* ¶¶ 215 & 226.
[140] *Id.* ¶¶ 65 & 137.
[141] *Id.* ¶¶ 216 & 227.
[142] *Id.* ¶¶ 207 & 230.
[143] *See id.* ¶¶ 20-28.
[144] *Id.* ¶ 207 ("...the defendants herein failed to make restitution from the benefits received by them for the work performed by Kasparov...where he thought he was working for himself, while due to defendant's fraud he in fact worked for them."); ¶ 230 ("...defendant Ambit failed to make restitution for the benefits received by it for the work performed by Aleph...where Aleph was building its downline in order to further develop and derive benefits from it, but due to Ambit's wrongful acts, Ambit, and not Aleph, in fact received benefits from the downline built by Aleph").

Ambit's business plan is not misconduct on Defendants' part.  Plaintiffs admit in their Complaint that they did not see Ambit's business plan before they signed up as consultants.[145]  A claim for unjust enrichment does not lie to relieve a party "of the consequences of [the party's] failure to…exercise caution with respect to a business transaction."[146]

Moreover, Plaintiffs' conclusory allegations regarding the benefits Defendants received do not satisfy Rule 8.  To state a claim for unjust enrichment, Plaintiffs must provide facts describing the benefits Defendants received.[147]  Plaintiffs only vaguely describe such work as "making presentations," "signing up consultants and customers" and "otherwise working to help growing (sic) Ambit's profits" and then demand millions of dollars in damages.[148]  Plaintiffs therefore fail to state claims for unjust enrichment.

### 6.    Kasparov fails to state a claim for a promise causing detrimental reliance.

Although there is no known claim for "promise causing detrimental reliance," Kasparov alleges the basic elements—albeit in a conclusory manner—of a promissory estoppel claim.[149]  Kasparov's promissory estoppel claim fails because it depends on his invalid agency theory.  He alleges that "Ambit, *by Thompson and Chambless*…made a clear and unambiguous promise to Kasparov…."[150]  As explained above, Kasparov's agency allegation fails as a matter of law.[151]  Kasparov therefore fails to state a valid promissory estoppel claim.

### III.    Conclusion

For these reasons, Defendants ask that the Court dismiss the Complaint with prejudice.

---

[145] *See id.* ¶¶ 37-38, 43, 79.
[146] *Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 118 (1st Dep't 2008).
[147] *See Broughel v. Battery Conservancy*, NO. 07-cv-7755(GBD), 2009 WL 928280, at *8 (S.D.N.Y. Mar. 30, 2009) (explaining that a "quantum meruit claim will be dismissed where the complaint contains nothing more than undefined and conclusory statements regarding the actual benefit plaintiff conferred on the defendant.").
[148] Complaint ¶¶ 207, 212, 230, 235.
[149] *See Rock v. Rock*, 953 N.Y.S.2d 165, 167 (2d Dep't 2012).
[150] Complaint ¶ 220 (emphasis added).
[151] *See, supra*, discussion in § C(4)(a).

DATE: December 7, 2012

THOMPSON & KNIGHT LLP

By: /s/ Gabrielle E. Farina
Stephen C. Rasch
Texas Bar No. 16551420, *pro hac vice*

Gabrielle Farina
New York Bar No. 4363412

Matthew M. Mitzner
Texas Bar No. 24068911, *pro hac vice*

900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592

ATTORNEYS FOR DEFENDANTS
AMBIT TEXAS, LLC,
CHRIS CHAMBLESS, AND
ROBERT STEPHEN THOMPSON.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF on this 7th day of December, 2012.

/s/ Gabrielle E. Farina
Gabrielle Farina