```
                                                                    1

                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

    - - - - - - - - - - - - - - - - X

    ALEPH TOWER, LLC.
    YURI KASPAROV
                                     :
              Plaintiffs                 12-CV-3488 (JG)

       -against-                     :   U.S. Courthouse
                                         Brooklyn, N.Y.
    AMBIT ENERGY, L.P.
    AMBIT TEXAS, LLC.
    CHRIS CHAMBLESS
    STEVEN THOMPSON

              Defendants             :
                                         October 19, 2012
    - - - - - - - - - - - - - - - - X   11:30 a.m.

    BEFORE:

              HONORABLE JOHN GLEESON
              United States District Judge


    APPEARANCES:

    For the Plaintiff:       HYMOWITZ LAW GROUP, PLLC
                             1928 Kings Highway
                             Brooklyn, New York 11229
                             BY:  DANIEL HYMOWITZ


    For the Defendant:       THOMPSON & KNIGHT LLP
                             900 Third Avenue
                             20th Floor
                             New York, New York 10022
                             BY:  GABRIELLE ELISE FARINA
                                  AND
                             THOMPSON & KNIGHT LLP
                             1722 Routh Street #1500
                             Dallas, Texas 75201
                             BY:  STEPHEN C. RASCH
```

```
                    ALEPH v. AMBIT                           2
```

1  Court Reporter:        RONALD E. TOLKIN, RPR, RMR, CRR
                          225 Cadman Plaza East
2                         Brooklyn, New York 11201
                          718-613-2647
3

4
    Proceedings recorded by mechanical stenography, transcript
5   produced by Computer-Assisted Transcript.

6                              ***

7            THE CLERK:  Aleph Towers, LLC, versus Ambit Texas,

8   LLC.

9            MR. RASCH:  Good morning, Your Honor.

10           This is Steve Rasch.

11           THE COURT:  Hi.  It's John Gleeson.  I'm in the

12  courtroom.  Your colleague, Ms. Farina, is here.  And so is

13  your adversary, Mr. Hymowitz.

14           As everybody knows, we're convening in connection

15  with this prospective motion to dismiss.  Could you just tell

16  me a little bit?  Could you give me like the two or three

17  minute version of your lawsuit, Mr. Hymowitz?

18           MR. HYMOWITZ:  Yes, Your Honor.

19           The defendant, Ambit Texas, it was Ambit Energy.

20  It's what is called MLM, multi-level marketing company.  My

21  client, Kasparov, he was, to the best of my knowledge, the

22  first consultant for this company to start its business here

23  in New York.

24           Each Ambit company has its own structure for the

25  consultants.  In particular, Ambit's structure is rather

1  complex. It needs understanding in order for consultants to
2  properly structure what is called underlying, people they sign
3  up under them in the structure.
4       We believe that Plaintiff Kasparov, he was actually
5  deceived and defrauded by -- he was made to agree to start the
6  business before getting the comprehensive picture of the
7  structure. We believe it was done on purpose.
8       That's probably the main claim we have, why there
9  was the fraud. And he lost lots of money that he otherwise
10 would have earned. Those who -- kind of entrapped him into
11 starting the business before knowing the structure, they
12 benefited from that situation.
13      The other -- there are, of course, other claims.
14 But the other plaintiff, Aleph Towers, its business was
15 terminated without justifiable reasoning. That's why it lost
16 the potential earnings otherwise it would make.
17      THE COURT: All right. You've got a fraud based --
18 and I know there are multiple claims, but they are essential
19 fraud based and contract based?
20      MR. HYMOWITZ: Or alternatively unjust enrichment.
21      THE COURT: Right. Which is kind of an off the
22 contract remedy in basically a contractual setting?
23      MR. HYMOWITZ: Yes, Your Honor.
24      THE COURT: I thought it was useful before we go
25 down the road to this motion, this proposed motion, to talk

1   about how it would play out.  For example, I see that there's
2   a desire on the defendants' part to move to dismiss based on
3   jurisdictional grounds, the failure to plead the facts
4   necessary for diversity jurisdiction.
5           It is a diversity case, is that correct?
6           MR. HYMOWITZ:  Yes, Your Honor.
7           THE COURT:  In my experience, I've seen these
8   motions get made and get opposed with the last thing that is
9   said is if the motion is successful, give me leave to replead
10  to cure the defect.  And whenever that happens, I think gee,
11  why didn't we just do that first before we had the motion.
12          Now, you've had a chance to see this letter.
13  There's another issue with like alleging the citizenship of
14  the members of the partnership and the joint venture.  Put
15  that aside for a second.  What's your response to this motion
16  going to be?
17          MR. HYMOWITZ:  Your Honor, we've done research.
18  This is a pile of papers that came from the Department of
19  Corporations in Texas.  And we can actually, this morning,
20  prove that there is diversity jurisdiction based on that
21  information.
22          Also, while the complaint is defective in that sense
23  that it doesn't clearly say -- it pleads the citizenship
24  instead as to residency, I believe there is some case law that
25  support says that the appropriate remedy would be to amend the

1  complaint rather than dismiss.
2          THE COURT: So you can plead the citizenship?
3          MR. HYMOWITZ: Yes, Your Honor.
4          THE COURT: So why don't we do that first? It's not
5  like I wouldn't enjoy having you come back to argue this, but
6  why don't we just do -- why don't you amend the complaint?
7          I don't mean to jump ahead, but under Rule 15 I
8  liberally would grant leave to amend. I take it there's no
9  objection, Mr. Rasch, on your part, to my granting leave to
10 amend first so we can have a stationary target for any future
11 motion.
12         Do you agree with that?
13         MR. RASCH: Yes, Your Honor.
14         May it please the Court, and let me first thank the
15 Court for allowing me to participate by telephone. I
16 appreciate that.
17         THE COURT: You're welcome.
18         MR. RASCH: I do think that there are jurisdictional
19 defects, as we pointed out. And I do think it is appropriate
20 for the Court to allow at least one opportunity to replead.
21 So we would not object to the Court allowing one opportunity
22 to replead.
23         THE COURT: All right. And I don't want to get too
24 far ahead of myself, but I did the read the letter that's
25 signed by Ms. Farina. It seems to me it's a little too much

1  to ask at the pleading stage for a plaintiff to allege the
2  citizenship of every single member of a limited partnership or
3  a joint venture.  I forgot exactly what you've got going here.
4          But assuming for argument's sake, and I think you're
5  right, that's a prerequisite for complete diversity.  I don't
6  really that I would be dismissing on that ground.  I think I
7  would allow a little bit of discovery because I don't see how
8  it can be reasonably expected of the plaintiff to know the
9  citizenship -- to even know who all of the members are of a
10 limited liability company or partnership, let alone know their
11 citizenship and being able to allege it.
12         What's your take on that?
13         MR. RASCH:  Your Honor, I would direct the Court to
14 two recent authorities out of the Eastern District.  And the
15 authority that exists on the precise question that the Court
16 just raised, in other words, is it permissible to file a case
17 in federal court on the basis of diversity jurisdiction
18 without alleging in the initial complaint sufficient facts to
19 comply with well established law in the Second Circuit on what
20 you have to allege when you have limited liability companies
21 and partnerships.
22         As the Court's well aware, limited liability
23 companies and partnerships are deemed to be citizens of each
24 state in which each member is a citizen, or each partner, both
25 general partners and limited partners.

1  There's two recent decision out of the Eastern
2  District.  There's a 2008 decision in the Source One Health
3  Care tax case.  And last year out of the Eastern District in
4  the Worldwide Plumbing Supply case.  And both of those cases
5  stand for the proposition that it's impermissible to file a
6  lawsuit if you don't have the proper jurisdictional fact to
7  begin with and then seek discovery to defeat it.  You have a
8  basis for being in federal court.
9  The case that's probably strongest on that is a 2008
10 case which says, in part, "Plaintiff has no vested right to
11 diversity jurisdiction.  It is a limited grant, narrowly
12 construed, available only to those who have sufficient facts
13 to meet the confines of the power conferred by the
14 Constitution and defined by Congress" --
15 THE COURT:  Slow down.  Slow down.  We have a court
16 reporter here, for crying out loud.  You're going a mile a
17 minute.
18 MR. RASCH:  "It is a limited grant, narrowly
19 construed, available only to those who have sufficient facts
20 to meet the confines of the power conferred by the
21 Constitution and defined by Congress."
22 This is the important language, I believe,
23 "acceptance of Plaintiff's theory."  The plaintiff in this
24 case was abdicating that it could file a lawsuit and then seek
25 discovery to see if there was a basis for being in federal

RONALD E. TOLKIN, RPR, RMR, CRR
OFFICIAL COURT REPORTER

1  court.

2          And the Eastern District said, "Acceptance of
3  Plaintiff's theory would allow any limited partnership to be
4  sued in any federal court on diversity grounds subject to
5  discovery confirming the presence or absence of diversity.
6  Plaintiffs' lack of knowledge does not excuse its obligations
7  under Rule 11.  If anything, the admission of a lack of
8  knowledge exacerbates any potential violation.

9          The recent case -- or the -- I'm sorry, both of
10 those cases that I've cited to the Court stand for that
11 proposition, that you can't file a lawsuit and then try to do
12 discovery.  If you don't know from the outset, you can't file
13 in federal court.

14         THE COURT:  Well, it's my fault with these
15 pre-motion conferences because they create the illusion that
16 they're actually a motion.  And here, we don't have a motion,
17 obviously.

18         But as long as you brought it up and I've heard your
19 argument, let me say this:  What you're saying is, if I sued
20 Thompson & Knight, your law firm, and I want to bring a case
21 in federal court alleging diversity jurisdiction -- let me see
22 if I can find a state that you don't have an office, Montana.

23         You're telling me that before I file it I've got to
24 find out all your partners in all these offices, including
25 Algiers, and find out where their citizenship is before I can

1  even file a lawsuit?
2          MR. RASCH:  Yes, sir.
3          THE COURT:  Well, you might -- as I say, you haven't
4  had the motion in front of me yet.  But you may have to get
5  some other court to say that rather than me.  But that's for
6  down the road.  We'll do an amendment.
7          The other thing that I want to bring up today,
8  again, in the interest of cutting to the chase, what's going
9  to be -- if you amend and then there's a motion, and there's a
10 motion to compel arbitration.  I don't have anything in front
11 of me, but is there an arbitration provision?
12         Assuming you get jurisdiction, assuming the
13 prospective motion attacking your amended complaint fails.  Is
14 there an arbitration provision in the agreement that you have
15 with the defendant.
16         MR. HYMOWITZ:  Your Honor, there are two points to
17 this.
18         THE COURT:  Just asking if there is one.  I don't
19 want to litigate the whole thing.
20         MR. HYMOWITZ:  It was our concern.  But Plaintiff
21 Kasparov, he entered into the agreement before I think it was
22 created, reading the contract for New York consultants.
23         So there were no provisions of choice of forum --
24 choice of forum at that time.  Generally it was understood and
25 agreed that later when the contract would be created, the

1  aberration will adhere to the provisions of the contract.
2          The second one, generally, the practice was that
3  concerns the plaintiff all left tours.  Although there was a
4  recent contract agreement, the way it was entered, I think at
5  least creates doubt that it was given a proper notice of this
6  choice of forum as well as arbitration and also mediation.
7          Because usually the consultant was sent out after
8  the presentation, after an hour and a half presentation, and
9  they were not shown the agreement.  They were taken
10 information by other already existing consultants.  That
11 information was entered into the internet web site.
12         THE COURT:  This might be a problem for you, but
13 it's down the road.  You might want -- it's a pretty strong
14 presumption in the favor of these arbitration agreements.
15 Depending on the precise language of it, it may well be that
16 these arguments are properly directed towards an arbitrator.
17         But, again, I don't want to prejudge it.  We know
18 what's coming around the bend.  Why don't we do this, how much
19 time do you need to amend your complaint to cure -- to address
20 these alleged gaps in the allegation that refers to
21 jurisdiction?
22         MR. HYMOWITZ:  I would like to ask four weeks based
23 on the recent decision of a parallel case BH 7 v. Ambit Energy
24 and the order on the motion to dismiss there, that requires
25 lots of facts on the personal jurisdiction.

THE COURT: Four weeks?

MR. HYMOWITZ: Four weeks.

1  THE COURT: Four weeks?
2  MR. HYMOWITZ: Four weeks.
3  THE COURT: Any objection?
4  MR. RASCH: No objection, Your Honor to four weeks.
5  Before we conclude, though, I do have one comment
6  that I think is relevant to the repleading as to which
7  entities were named.
8  The COURT: Go ahead.
9  MR. RASCH: One of the entities that's been sued was
10 Ambit Energy LP. And that entity doesn't exist anymore. It
11 was merged out of existence to Texas, LLC. And Plaintiff's
12 counsel is aware of that because he actually references the
13 merger in his complaint.
14 So one of the issues with premotion conference
15 letter is that Ambit Energy LP is not a proper defendant.
16 Because it doesn't exist anymore.
17 THE COURT: Okay. I'm not going to rule on that.
18 Talk to each other. Be sensible.
19 MR. HYMOWITZ: That is agreed.
20 THE COURT: You will file your amended complaint by
21 four weeks from today, November 16th. Should there still be a
22 desire to move to dismiss the amended complaint, how much time
23 do you think you will need, Mr. Rasch, to file your motion?
24 MR. RASCH: We would be able to file the motion,
25 Your Honor, within 14 days.

1    THE COURT:  All right.  There's Thanksgiving in
2 there.  You want it on the 30th or would rather have it on the
3 7th of December.
4    MR. RASCH:  Your Honor, that's a good point.
5 Probably the 7th of December if that's all right with the
6 Court.
7    THE COURT:  Sure.  Moving papers on the 7th of
8 December.  Opposition papers by December 21st.  Reply papers
9 by -- I have Ms. Farina's interest at heart here, by January
10 10th.
11    I'll see you on the 18th?  Are we here on the 18th,
12 Ilene?
13    THE CLERK:  Yes, Judge.  At 11:00 a.m..
14    THE COURT:  11:00 o'clock on the 18th for oral
15 argument of any -- you don't have to make a motion once the
16 complaint is amended.  But if you do, that's our schedule and
17 that's when I'll see you.
18    All right?
19    MR. HYMOWITZ:  Thank you, Your Honor.
20    MR. RASCH:  Thank you, Your Honor.
21    THE COURT:  Thank you.  Have a good day.