UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEPH TOWERS, LLC, YURI (URI) KASPAROV<br><br>Plaintiffs,<br><br>-against-<br><br>AMBIT TEXAS, LLC, CHRIS CHAMBLESS, STEVEN THOMPSON<br><br>Defendants. | Civil Action No. 1:12-cv-03488-JG-JO<br><br><br><br><br><br><br><br>Jury Trial Demanded |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS

DATE: September 6, 2013

Stephen C. Rasch
Texas Bar No. 16551420, *pro hac vice*

Gabrielle Farina
New York Bar No. 4363412

Matthew M. Mitzner
Texas Bar No. 24068911, *pro hac vice*

Thompson & Knight LLP
900 Third Avenue, 20th Floor
New York, NY 10022-4728
Telephone: 212.751.3014
Facsimile: 214.999.1592

ATTORNEYS FOR DEFENDANTS
AMBIT TEXAS, LLC,
CHRIS CHAMBLESS, AND
ROBERT STEPHEN THOMPSON.

# TABLE OF CONTENTS

Page

I.  Introduction and Factual Background ........................................................1

II. Argument and Authorities ...........................................................................2

    A.  Pursuant to the parties' Agreement, the arbitrator, not the Court, must determine the issue of arbitrability. ......................................3

    B.  If the Court determines the issue of arbitrability, it must compel arbitration ...........................................................................5

        1.  There is a valid arbitration agreement. ............................................5

            a.  Plaintiffs are parties to an arbitration agreement with the Ambit Companies. ................................................ 5

            b.  Kasparov is required to arbitrate with Thompson............... 8

        2.  The dispute before the Court is within the scope of the arbitration agreements. ...................................................9

    C.  The Court must stay these proceedings pending arbitration. ...................11

III. Conclusion ....................................................................................................11

T<small>ABLE OF</small> A<small>UTHORITIES</small>

**Page**

**FEDERAL COURT CASES**

*AT & T Tech., Inc. v. Commc'n Workers of Am.,*
  475 U.S. 643 (1986) ............................................................................ 9, 10
*Contec Corp. v. Remote Solution Co.,*
  398 F.3d 205 (2nd Cir. 2005) .............................................................. 4, 5
*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.,*
  414 F.3d 325 (2d Cir. 2005) .................................................................... 2
*First Options of Chi. v. Kaplan,*
  514 U.S. 938 (1995) ................................................................................ 3
*Halliburton Energy Servs., Inc. v. BJ Servs. Co.,*
  No. 2:08–cv–475–TJW, 2010 WL 2991031 (E.D. Tex. July 28, 2010) .................... 4, 5

**STATE COURT CASES**

*CSAM Cap., Inc. v. Lauder,*
  67 A.D.3d 149 (N.Y. App. Div. 2009) ..................................................... 2
*Forest Oil Corp. v. McAllen,*
  268 S.W.3d 51 (Tex. 2008) .................................................................. 11
*Frankel v. Citicorp Ins. Servs., Inc.,*
  913 N.Y.S.2d 254 (N.Y. App. Div. 2010) ................................................ 2
*In re 24R, Inc.,*
  324 S.W.3d 564, 566 (Tex. 2010) ......................................................... 6
*In re Bank One,*
  216 S.W.3d 825 (Tex. 2007) .............................................................. 5, 9
*In re D. Wilson Construction Co.,*
  196 S.W.3d 774 (Tex. 2006) .............................................................. 5, 6
*In re Halliburton Co.,*
  80 S.W.3d 566 (Tex. 2002) ................................................................. 3, 8
*In re Kellogg Brown & Root, Inc.,*
  166 S.W.3d 732 (Tex. 2005) .............................................................. 7, 8
*In re L & L Kempwood Assoc., L.P.,*
  9 S.W.3d 125 (Tex. 1999) ............................................................. 3, 4, 5
*In re Rio Grande Xarin II, Ltd. v. Wolverine Robstown, L.P.,*
  No. 13-10-00115-CV, 2010 WL 2697145 (Tex. App.—Corpus Christi July 6,
  2010, pet. dism'd) .............................................................................. 4, 5
*In re Rubiola,*
  334 S.W.3d 220 (Tex. 2011) ......................................................... 5, 6, 8, 9
*In re Weekley Homes, L.P.,*
  180 S.W.3d 127 (Tex. 2005) .................................................................. 7
*J. M. Davidson, Inc. v. Webster,*
  128 S.W.3d 223 (Tex. 2003) .................................................................. 5

*Jack B. Anglin Co. v. Tipps,*
    842 S.W.2d 266 (Tex. 1992) ........................................................................ 3
*Rachal v. Reitz,*
    --- S.W.3d ---, 2013 WL 1859294 (Tex. 2013) ........................................ 7, 8

## FEDERAL STATUTORY AUTHORITIES

9 U.S.C. § 2 ................................................................................................ 3
9 U.S.C. § 3 .............................................................................................. 11

## STATE STATUTORY AUTHORITIES

Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021 .............................................. 11

## ADDITIONAL AUTHORITIES

American Arbitration Association, Commercial Rules, Rule (a) ........................... 4

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Aleph Towers, LLC and Yuri Kasparov (collectively, "Plaintiffs") filed suit against Defendants Ambit Texas, LLC and Stephen Thompson (collectively, "Defendants"), raising various tort and contract claims.[1]  The Court dismissed Plaintiffs' fraud, conspiracy, breach of fiduciary duty, and unjust enrichment claims, leaving only four claims: (1) Kasparov's claim for breach of a written contract against Ambit, (2) Kasparov's claim for breach of an oral contract against Thompson, (3) Kasparov's promissory estoppel claim against Ambit, and (4) Aleph Towers, LLC's ("Aleph") claim for breach of a written contract against Ambit.[2]

Although they attempt to artfully plead around a written agreement, Plaintiffs each claim rights under an Independent Consultant Application and Agreement (the "Agreement"), which is a written contract between each Plaintiff and Ambit Energy, L.P., Ambit Marketing, L.P., and any other Ambit-related entity (collectively, the "Ambit Companies").[3]   The Agreement incorporates several documents, including the "Policies and Procedures" and the "Compensation Plan."[4]  The Agreement and the Policies and Procedures set out the basic terms and conditions of each Independent Consultant's relationship with the Ambit Companies.  Both Kasparov and Aleph admit that they agreed to become Independent Consultants.[5]

The Agreement contains an arbitration provision.  Specifically, it provides:

---

[1]      *See* Pls.' Am. Verified Compl. at ¶¶ 180-235 (Dkt. 18).  Plaintiffs also sued Chris Chambless, but the Court dismissed all claims against Chambless.  *See* Memorandum & Order at 17 (Dkt. 30).

[2]      *See* Memorandum & Order at 17 (Dkt. 30).

[3]      *See* Ambit Marketing, L.P. Independent Consultant Application and Agreement [hereinafter, the "Agreement"], attached as Ex. 1.  This Agreement is also attached to Plaintiffs' Amended Verified Complaint as an exhibit, and Plaintiffs rely on this Agreement in their Complaint.  *See* Pls.' Am. Verified Compl. at ¶ 50 & Ex. 2.

[4]      *See id.* ¶ 3; Policies and Procedures, attached as Ex. 2.

[5]      *See* Pls.' Am. Verified Compl. at ¶¶ 214, 225 (Dkt. 18).

The parties agree that any claim, dispute or other difference between [Independent Consultants] and the Ambit Companies, or among ICs and the Ambit Companies, shall be exclusively resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association with arbitration to occur at Dallas, Texas.[6]

Despite alleging the existence of an oral agreement with Ambit Texas, LLC ("Ambit"), the Court found that "the complaint alleges . . . [a] *written* agreement between plaintiffs and Ambit . . . ."[7] The Court referred to both Plaintiff's First Amended Complaint and the exhibits thereto and found that "the only reasonabl[e] construction of the complaint is that it alleges a written agreement between plaintiffs and Ambit."[8]

## II.   ARGUMENT AND AUTHORITIES

The Agreement, which incorporates the Policies and Procedures, is "governed under the laws of the State of Texas and shall be so governed without regard to any conflict of law principles to the contrary."[9]   The question of whether a choice-of-law clause is valid is determined under the relevant forum's choice-of-law rules.[10]   In this case, because this Court is sitting in diversity, the relevant forum is New York.[11]   Under New York law, choice-of-law provisions in contracts containing arbitration clauses are enforceable.[12]   Thus, Texas law governs the parties' disputes.

---

[6]      Agreement ¶ 9, attached as Ex. 1.

[7]      Memorandum & Order at 11 (Dkt. 30) (emphasis added).

[8]      *See id.* at 10.

[9]      *Id.*

[10]     *See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005).

[11]     *See id.* at 333 ("The [New York federal] district court in this case, sitting in diversity, was bound to apply New York law to determine the scope of the contractual choice-of-law clause.").

[12]     *See, e.g., Frankel v. Citicorp Ins. Servs., Inc.*, 913 N.Y.S.2d 254, 260 (N.Y. App. Div. 2010) (holding that South Dakota law applies based on a choice-of-law clause); *CSAM Cap., Inc. v. Lauder*, 67 A.D.3d

The fact that the Agreements contain a Texas choice-of-law provision does not preclude the application of federal law.[13]   Because the Agreements involve interstate commerce, the Federal Arbitration Act ("FAA") applies.[14]   Although Plaintiffs' claims must be arbitrated pursuant to either the Texas General Arbitration Act or the FAA, for simplicity, this motion will refer to the FAA.

## A.   Pursuant to the parties' Agreement, the arbitrator, not the Court, must determine the issue of arbitrability.

Plaintiffs' arbitration agreement with Ambit requires the arbitrator to determine the issue of arbitrability.   While the general presumption under the FAA is that the issue of arbitrability should be resolved by the courts, there is an exception when the arbitration agreement clearly and unmistakably intended the question of arbitrability to be resolved by the arbitrator.[15]

Here, Plaintiffs' arbitration agreement with Ambit provides that the arbitration will be conducted "pursuant to the Commercial Arbitration Rules of the American Arbitration Association . . . ."[16]   Rule 7(a) of the Commercial Arbitration Rules of the American Arbitration Association ("AAA") provides that "[t]he arbitrator shall have the power to rule on his or her

---

149, 154 (N.Y. App. Div. 2009) (noting that "the FAA requires that courts respect the agreements of parties to arbitrate, including agreements as to what law governs arbitration procedures").

[13]   *See In re L & L Kempwood Assoc., L.P.*, 9 S.W.3d 125, 127-28 (Tex. 1999) ("The choice of law provision did not specifically exclude the application of federal law, and absent such an exclusion we decline to read the choice-of-law clause as having such an effect.").

[14]   *See* 9 U.S.C. § 2; *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) (orig. proceeding) (under the FAA, an arbitration agreement that is valid under state contract law and involves interstate commerce is "valid, irrevocable, and enforceable"); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding) (noting that "[i]nterstate commerce may be shown in a variety of ways, including . . . location of headquarters in another state. . . [or] interstate mail and phone calls in support of a contract").

[15]   *See First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995).

[16]   Agreement ¶ 9, attached as Ex. 1.

own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[17]

As recognized by Texas courts, many courts have concluded that incorporation of the AAA rules "clearly and unmistakably evidences the parties' intent to allow the arbitrator to decide issues of arbitrability."[18] In *Burlington Resources Oil & Gas Co. v. San Juan Basin Royalty Trust*, the court ultimately concluded that the parties had not clearly and unmistakably agree for the arbitrator to determine arbitrability because "the parties, in their Arbitration Agreement, unambiguously detailed the specific subjects and amounts subject to arbitration, and arbitrability was not one of those matters."[19] Unlike *Burlington Resources*, where the agreement detailed the scope of issues that were arbitrable, here, the Agreement specifically stated that *any* claims or disputes between the parties are subject to arbitration. Indeed, in this case, where Plaintiffs and Ambit agreed to arbitrate *any* claims, disputes, or differences, and the parties incorporated the

---

[17]    *See* American Arbitration Association, Commercial Rules, Rule 7(a), *available at* adr.org/commercial.

[18]    *See Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 40 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also In re Rio Grande Xarin II, Ltd. v. Wolverine Robstown, L.P.*, No. 13-10-00115-CV, 2010 WL 2697145, at *8-9 (Tex. App.—Corpus Christi July 6, 2010, pet. dism'd) (holding that incorporation of the AAA rules clearly and unmistakably evidences the parties' intent to submit the issue of arbitrability to the arbitrator); *Halliburton Energy Servs., Inc. v. BJ Servs. Co.*, No. 2:08-cv-475–TJW, 2010 WL 2991031, at *3 (E.D. Tex. July 28, 2010) ("When an arbitration agreement incorporates by reference rules which give the arbitrator the power to rule on arbitration jurisdiction, the parties' incorporation of those rules evidences a clear and unmistakable intent to delegate the determination of arbitrability to an arbitrator." (citation and internal quotation marks omitted)); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2nd Cir. 2005) (holding that incorporation of AAA Rules, including Rule 7(a), clearly and unmistakably evinced intent for arbitrator to decide whether nonsignatory party bound by arbitration agreement).

[19]    *Burlington Res. Oil & Gas Co.*, 249 S.W.3d at 40.

AAA Commercial Arbitration Rules, the arbitrator, not the court, must decide the issue of arbitrability.[20]

## B.   If the Court determines the issue of arbitrability, it must compel arbitration.

Should the Court disagree that the arbitrator must determine the issue of arbitrability, the Court must nonetheless compel arbitration and stay this action pending the completion of the arbitration.  Under both Texas law and the FAA, a party seeking to compel arbitration must (1) establish the existence of an arbitration agreement; and (2) show that the disputes fall within the scope of the agreement.[21]  As shown below, both elements are met in this case.

### 1.   There is a valid arbitration agreement.

#### a.   *Plaintiffs are parties to an arbitration agreement with the Ambit Companies.*

Plaintiffs both plead that they accepted the Agreement, which contains an arbitration provision.[22]  The determination of whether the parties have a valid agreement to arbitrate is governed by state law.[23]  "Arbitration agreements are interpreted under traditional contract principles."[24]

---

[20]     *See In re Rio Grande Xarin II, Ltd.*, , 2010 WL 2697145, at *8-9; *Halliburton Energy Servs., Inc.*, 2010 WL 2991031, at *3; *Contec Corp.*, 398 F.3d at 208.  Pursuant to Texas law, the Court, not the arbitrator, must determine the issue of whether the arbitration provision covers disputes with a non-party, such as Thompson.  *See, e.g., Elgohary v. Herrera*, --- S.W.3d ----, 2013 WL 811446, at *5 (Tex. App.—Houston [1 Dist.] Mar 05, 2013, no pet.).  Nonetheless, for the reasons set forth below in Section II.B.1.b, the Court should compel Plaintiffs to arbitrate their claims against Thompson.

[21]     *In re Bank One*, 216 S.W.3d 825, 826 (Tex. 2007) (setting out the elements required to compel arbitration under the FAA); *In re D. Wilson Construction Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (elements of arbitration under FAA and Texas General Arbitration Act ("TGAA")).  A true and correct copy of the Texas Supreme Court Journal version of *In re Bank One* is attached as Exhibit B to this motion.

[22]     *See* Pls.' Am. Verified Compl. at ¶¶ 50, 77-79 (Dkt. 18).

[23]     *See In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) ("Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate.").

[24]     *See J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

The Agreement, which both Plaintiffs accepted, is a valid and enforceable contract under Texas law.   Both Plaintiffs admit that they agreed to the Agreement,[25] and the arbitration provision is supported by adequate consideration.   A "[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."[26]

The Agreement incorporates several other documents by reference, including the Policies and Procedures and the Compensation Plan.[27]   Under Texas law, by incorporating the Policies and Procedures and the Compensation Plan by reference, the arbitration provision in the Agreement applies to these other documents as well.[28]

Moreover, although Plaintiffs attempt to avoid the arbitration provision contained in the Agreement by claiming that an Ambit consultant signed up on Plaintiffs' behalf,[29] this fact will not allow them to avoid the application of the arbitration provision in the Agreement and the Policies and Procedures.   Under Texas law, even if Plaintiffs are non-signatories — which Ambit denies — Plaintiffs are bound by the arbitration provision in the Agreement under the doctrine of direct benefits estoppel.

"An obligation to arbitrate not only attaches to one who has personally signed the written arbitration agreement but may also bind a non-signatory under principles of contract law and agency."[30]   Under the doctrine of direct benefits estoppel, "a non-signatory plaintiff seeking the

[25]   *See* Pls.' Am. Verified Compl. at ¶¶ 50, 77-79 (Dkt. 18).

[26]   *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010).

[27]   *See id.* ¶ 3; Policies and Procedures, attached as Ex. 2.

[28]   *See In re D. Wilson Construction Co.*, 196 S.W.3d at 781 ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference, . . . and we agree with the courts of appeals that arbitration-related language is no exception to this rule.").

[29]   *See* Pls.' Am. Verified Compl. at ¶¶ 54, 79 (Dkt. 18).

[30]   *In re Rubiola*, 334 S.W.3d at 224.

benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."[31]  For example, in *In re Weekley Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005), the Texas Supreme Court held that even though the plaintiffs did not sign the contract containing the arbitration provision, they were nonetheless bound to arbitrate because they sued under the contract.[32]  The "suit on the contract was their assent to the contract's terms, including the arbitration provision."[33]

As in *In re Weekly* Homes, here, both Plaintiffs seek benefits under the Agreement and Policies and Procedures by requesting compensation in accordance with the Ambit Compensation Plan, which is expressly incorporated into the Agreement containing the arbitration clause.[34]  For example, Kasparov alleges that "[a]t the time Kasparov was signed up in Thompson's downline, it was the mutual understanding of the parties that . . . Ambit would compensate Kasparov in accordance with the then existing Ambit's compensation referred to in the [sic] Ambit's standard consultant agreement."[35]   Similarly, Aleph contends that Ambit "agreed to compensate Aleph in accordance with the Ambit standard compensation plan."[36]

---

[31]     *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

[32]     *Id.* at 134.

[33]     *See Rachal v. Reitz*, --- S.W.3d ---, 2013 WL 1859294, at *5 (Tex. 2013) (summarizing *In re Weekly Homes, L.P.*).

[34]     *See* Agreement ¶ 3, attached as Ex. 1.

[35]     *See* Pls.' Am. Verified Compl. at ¶ 50 (Dkt. 18).

[36]     *See id.* ¶ 216.

By seeking benefits under the Agreement and the Compensation Plan, Plaintiffs are estopped from attempting to avoid the arbitration provision.[37] Thus, Plaintiffs cannot avoid the agreement to arbitrate by artful pleading; they are bound to arbitrate with Ambit.

  b.  *Kasparov is required to arbitrate with Thompson.*

Thompson is not a signatory to the Agreement between Kasparov and Ambit; however, Plaintiffs are nonetheless required to arbitrate any dispute they have with Thompson under Texas law. As noted above, state law applies to determine whether there is a valid agreement to arbitrate.[38] The Texas Supreme Court has held that non-signatories may compel arbitration if they are identified as parties to the arbitration agreement, even though they did not sign the agreement.[39] Specifically, the court "conclude[d] that signatories to an arbitration agreement may identify other parties in their agreement who may enforce arbitration as though they signed the agreement themselves."[40]

Here, the language of the arbitration provision in the Agreement specifies that "[t]he parties agree that any claim, dispute, or other difference between ICs and the Ambit Companies, *or among ICs and the Ambit Companies*, shall be exclusively resolved by binding arbitration . . . ."[41] Kasparov expressly agrees that Thompson is an Ambit Independent Consultant.[42] Thus, the Agreement expressly contemplates arbitration *among* Independent Consultants, such as

---

[37]  *See Rachal*, 2013 WL 1859294, at *5-6 (holding that the doctrine of direct benefits estoppel applied to the beneficiary of a trust who attempted to enforce the rights that would not exist without the trust, thus "manifest[ing] her assent to the trust's arbitration clause"); *In re Weekley Homes, L.P.*, 180 S.W.3d at 134; *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739.

[38]  *See In re Rubiola*, 334 S.W.3d at 224.

[39]  *See id.*

[40]  *Id.* at 226.

[41]  Agreement ¶ 9, attached as Ex. 1 (emphasis added).

[42]  *See Pls.' Am. Verified Compl. at ¶ 50 (Dkt. 18).

Thompson and Kasparov, and the Ambit Companies.

Despite Kasparov's attempt to plead the oral contract as solely between himself and Thompson, as the Court previously noted, "Kasparov . . . alleges that Ambit has a contractual duty pursuant to the Ambit compensation plan to pay him as if his downline had been configured as promised [by Thompson]."[43]   Kasparov's claim fits squarely within the language of the arbitration provision in the Agreement, because it involves a "claim . . . among ICs and the Ambit Companies."[44]   Texas law therefore permits Thompson to enforce the arbitration agreement.[45]

> 2.   The dispute before the Court is within the scope of the arbitration agreements.

Plaintiff's claims fall within the scope of the arbitration provision contained in the Agreement.   Texas law requires courts to "resolve doubts as to scope in favor of finding coverage."[46]   This is particularly true where the language regarding the scope of the agreement is broad.   "In such cases, 'in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'"[47]

Texas law recognizes that an agreement to arbitrate *any* claim or dispute is "broad."[48] For example, in *Abazi*, an arbitration agreement between an employer and employee that

---

[43]   Memorandum & Order at 11 (Dkt. 30).

[44]   Agreement ¶ 9, attached as Ex. 1 (emphasis added).

[45]   *See In re Rubiola*, 334 S.W.3d at 226.

[46]   *In re Bank One*, 216 S.W.3d at 826.

[47]   *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 857 (Tex. App.—Dallas 2010, no pet.) (quoting *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)).

[48]   *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 459 (Tex. App.—Dallas 2011, no pet.) (quoting *BDO Seidman, LLP*, 327 S.W.3d at 857).

provided: "[b]y accepting and continuing the employment relationship [the employer] and each employee agree that any controversy, dispute or claim between an employee and [the employer]," with three enumerated exceptions, "shall be settled by final and binding arbitration . . . ."[49]   The court concluded that this arbitration provision encompassed post-employment claims between the employer and an employee, because the clause was broad and there was no "language expressly excluding claims between [the employer] and former employees."[50]

Similarly, here, the Agreement provides that "[t]he parties agree that *any claim, dispute or other difference* between [Independent Consultants] and the Ambit Companies, or among ICs and the Ambit Companies, shall be exclusively resolved by binding arbitration . . . ."[51]   This language is broad and must be interpreted to include Plaintiffs' claims against Ambit and Thompson unless there is "forceful evidence of a purpose to exclude the claim from arbitration."[52]

There is *no* evidence, much less "forceful evidence," that the parties intended to exclude the claims at issue here.   The Agreement expressly recognizes that the parties will arbitrate "any claim, dispute, or other difference" between Independent Consultants and Ambit, or among Independent Consultants and Ambit.[53]   All of Plaintiffs' claims fall within the scope of the Agreement.   First, Plaintiffs' breach-of-contract claims against Ambit are indisputably claims or disputes between Independent Consultants and Ambit.   Second, Kasparov's breach-of-contract claim against Thompson is a dispute among Independent Consultants and Ambit because as part of his claim against Thompson, Kasparov alleges that "Ambit has a contractual duty pursuant to

---

[49]     *Id.* at 457-58.

[50]     *Id.* at 461.

[51]     Agreement ¶ 9, attached as Ex. 1 (emphasis added).

[52]     See *BDO Seidman, LLP*, 327 S.W.3d at 857; *Abazi*, 348 S.W.3d at 459.

[53]     Agreement ¶ 9, attached as Ex. 1.

the Ambit compensation plan to pay [Kasparov] as if his downline had been configured as promised [by Thompson]."[54]  Finally, Kasparov's promissory estoppel claim against Ambit also falls within the scope of the arbitration provision in the Agreement.  The Agreement's language is not limited to claims or disputes related to the Agreement; rather, the arbitration provision extends to "*any claim, dispute, or other difference*" between Independent Consultants and Ambit.[55]  Thus, Kasparov's promissory estoppel claim falls within this broad language and must be arbitrated.[56]

In conclusion, all of Plaintiffs' claims fall within the scope of a valid arbitration agreement, and they must therefore arbitrate their claims against Ambit and Thompson.

## C.  The Court must stay these proceedings pending arbitration.

Pursuant to both Texas law and the FAA, the Court must stay the proceedings pending arbitration of the parties' dispute.[57]  Indeed, "[i]f a trial court finds that the claim falls within the scope of a valid arbitration agreement, the court has no discretion but to compel arbitration and stay its own proceedings."[58]  Because, as shown above, the parties must arbitrate Plaintiffs' claims, the Court must stay these proceedings pending arbitration.[59]

## III.   CONCLUSION

For these reasons, Defendants ask that the Court order compel arbitration of Plaintiffs' claims against Defendants and stay the proceedings pending the completion of the arbitration.

---

[54]     Memorandum & Order at 11 (Dkt. 30).

[55]     Agreement ¶ 9, attached as Ex. 1 (emphasis added).

[56]     *See BDO Seidman, LLP*, 327 S.W.3d at 857; *Abazi*, 348 S.W.3d at 459.

[57]     *See* 9 U.S.C. § 3; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021, 171.025.

[58]     *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008).

[59]     *See id.*; 9 U.S.C. § 3; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021, 171.025.

DATE: September 6, 2013                THOMPSON & KNIGHT LLP


                                       By:/s/ Stephen C. Rasch
                                       Stephen C. Rasch
                                       Texas Bar No. 16551420, *pro hac vice*

                                       Gabrielle Farina
                                       New York Bar No. 4363412

                                       Matthew M. Mitzner
                                       Texas Bar No. 24068911, *pro hac vice*

                                       900 Third Avenue, 20th Floor
                                       New York, NY 10022-4728
                                       Telephone: 212.751.3014
                                       Facsimile: 214.999.1592

                                       ATTORNEYS FOR DEFENDANTS
                                       AMBIT TEXAS, LLC,
                                       CHRIS CHAMBLESS, AND
                                       ROBERT STEPHEN THOMPSON.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure by ECF on this 6th day of September, 2013.


                                       /s/ Stephen C. Rasch
                                       Stephen C. Rasch