UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
YURI (URI) KASPAROV,                                             REPORT AND
      Plaintiff,                   RECOMMENDATION
   - against -
AMBIT TEXAS, LLC, et al.,                                        12-CV-3488 (WFK) (JO)
      Defendants.
-----------------------------------------------------------X

JAMES ORENSTEIN, Magistrate Judge:

  Plaintiff Yuri Kasparov ("Kasparov") asserts a variety of tort, contract, and quasi-contract claims against defendants Ambit Texas, LLC ("Ambit") and Steven Thompson ("Thompson"). Docket Entry ("DE") 18 (Amended Verified Complaint).[1] The defendants now seek to transfer venue and to compel arbitration and stay further proceedings. DE 117; DE 118. For the reasons set forth below, I respectfully direct the Clerk to transfer this case to the United States District Court for the Northern District of Texas, to which I respectfully defer a ruling on the motion to compel arbitration.

I.  Background

  A.  Facts

  Ambit is a multi-level marketing organization that sells energy to customers through independent consultants. DE 18 (Amended Complaint) ¶¶ 20, 23. Thompson was one of Ambit's first consultants and top earners. *Id.* ¶ 14. In the Spring of 2007, Thompson, acting on Ambit's behalf, asked Kasparov to become Ambit's first consultant in New York, and promised to optimize his "downline." *Id.* ¶¶ 29, 48.[2] After a "formal sign up," Kasparov began working as an Ambit consultant and started receiving checks in June 2007. *Id.* ¶¶ 48-49, 66. Kasparov accuses the defendants of paying

---

[1] For the reasons set forth below, I assume the pleading cited above to be operative, notwithstanding the subsequent filing of a Second Amended Verified Complaint. *See* DE 68. The claims previously asserted by plaintiff Aleph Towers, LLC and against defendant Chris Chambless have been dismissed. *See* DE 30; DE 83. I therefore respectfully direct the Clerk to amend the caption as rendered above.

[2] According to the Complaint, a consultant's "downline" is the group of customers and consultants he or she recruits. DE 18 ¶ 27. A downline can apparently be "configured" either "optimally" or "in a suboptimal manner" – with the former being more advantageous to the consultant. *See id.* ¶ 28.

him "significantly smaller amounts" than they allegedly owed him, and also accuses Thompson of breaking the promise to optimize his downline. *Id.* ¶¶ 67-69.

B. <u>Proceedings</u>

In the Amended Complaint filed on November 16, 2012, Kasparov accused the defendants of fraud, conspiracy, breach of fiduciary duty, unjust enrichment, breach of contract, breaching a promise upon which he relied to his detriment. *See id.* ¶¶ 180-223. Appended to the pleading as exhibits, and incorporated by reference, were several documents that collectively reflected, according to Kasparov, his agreement with the defendants: the "Ambit Marketing, L.P. Independent Consultant Application and Agreement," Ambit's "Policies & Procedures," and a document (apparently a print-out of presentation slides, entitled "Your Window of Opportunity" and subtitled "The Ambit Energy Business Presentation") that includes what Kasparov describes as "Ambit's Standard Compensation Plan[.]" *See id.* ¶ 50; DE 18-2 (Application and Agreement); DE 18-3 (Policies and Procedures); DE 18-4 (Presentation; collectively with the preceding two documents, the "Agreement Documents").

The Agreement Documents included two provisions pertinent to the instant motions. First, the Policies and Procedures document provides: "Jurisdiction and venue of any matter not subject to arbitration shall reside exclusively in Dallas County, State of Texas." DE 18-3 ¶ 9.3. Second, the Application and Agreement provides: "The parties agree that any claim, dispute or other difference between [Independent Consultants] and the Ambit Companies, or among ICs and the Ambit Companies, shall be exclusively resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association with arbitration to occur at Dallas, Texas." DE 18-2 ¶ 9.

The defendants moved to dismiss the Amended Complaint on December 7, 2012. DE 19. By order dated August 23, 2013, the court granted the motion in part and denied it in part. DE 30.

Specifically, the court "conclude[d] that the complaint alleges (1) a written agreement between [Kasparov] and Ambit and (2) a collateral oral agreement between Kasparov and Thompson; and (3) breach of the terms of these agreements." *Id.* at 9. "In light of the exhibits and the allegations as a whole, the only reasonable construction of the complaint is that it alleges a written agreement between [Kasparov] and Ambit." *Id.* at 10. Based on that understanding of the claims, the court dismissed all of Kasparov's claims except a breach of contract claim against both Ambit and Thompson and a promissory estoppel claim against Ambit alone. *Id.* at 17.

On January 13, 2014, plaintiff filed a Second Amended Verified Complaint. DE 68. That pleading did not attach as exhibits or incorporate by reference the Agreement Documents that the court had found, in resolving the earlier dismissal motion, outlined the scope of the contractual duties on which the surviving contract claim was predicated. *See* DE 30 at 10. Indeed, this latest pleading omitted any mention of the Agreement Documents. *See* DE 68; DE 18.

The defendants filed the pending motion to compel arbitration and stay the proceedings on September 6, 2013. *See* DE 34 (notice of motion); DE 35 (supporting memorandum) ("Arbitration Memo."). Two weeks later, they sought leave to file a motion to transfer venue. DE 39. The court ultimately approved my suggestion to defer both matters pending the resolution of preliminary matters, and referred both motions to me by order dated December 30, 2013. The defendants then refiled the motion to compel arbitration, and filed the motion to transfer venue, along with a supporting memorandum, on August 17, 2015. DE 117 (notice of motion to compel arbitration); DE 118 (notice of motion to transfer venue); DE 118-1 ("Venue Memo."). Each motion had previously been filed and then terminated without prejudice pending the resolution of preliminary matters; while the initial iterations of the motions had been pending, the court referred both to me by order dated December 30, 2013. Kasparov filed his responsive memoranda to both motions on September 4,

3

2015. *See* DE 120 ("Arbitration Opp."); DE 66 ("Venue Opp."); DE 121 at 2 (incorporating arguments previously made in Venue Opp.). The defendants filed their reply memoranda on September 14, 2015. *See* DE 122 ("Venue Reply"); DE 123 ("Arbitration Reply").

II.   Discussion

　　A.　The Operative Pleading

In an attempt to avoid the Agreement Documents' forum selection provision, Kasparov omitted from the Second Amended Verified Complaint factual allegations he previously made in his prior pleading. A court has no obligation to accept as true an amended complaint's allegations if they directly contradict facts set forth in a prior pleading. *Romain v. Capital One, N.A.*, 2013 WL 6407731, at *3 (E.D.N.Y. Dec. 9, 2013); *Kilkenny v. Law Office of Cushner & Garvey, LLP*, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012) (collecting cases); *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (alterations and internal quotation marks omitted)).

In the first Amended Verified Complaint, Kasparov explicitly predicated his claims on the Agreement Documents – which included both the forum selection and arbitration provisions. *See* DE 18 ¶ 50 (citing all three Agreement Documents). He directly contradicts that pleading – and studiously avoids even acknowledging the existence of the Agreement Documents – in his Second Amended Verified Complaint, which alleges that "[a]s to Kasparov's arrangement with Ambit, the only writing that was alluded to by Ambit at all at that time was the Compensation Plan … then in existence." DE 68 ¶ 66. That assertion not only contradicts the previous complaint, it also disregards the law of this case to the extent that the court relied on the first Amended Verified Complaint's identification of the

4

pertinent written contractual agreements when it allowed Kasparov's contract claims to survive the motion to dismiss. *See* DE 30 at 9-10. Under these circumstances, in which Kasparov blatantly contradicts previous factual allegations in an attempt to avoid the forum selection clause that defendants now seek to enforce, the court can and should disregard the Second Amended Verified Complaint and instead accept as true the facts alleged in the First Amended Verified Complaint. *See Wallace v. New York City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).

    B.    <u>The Agreement</u>

In analyzing the instant motions, I assume that the parties' written contract includes the forum selection and arbitration provisions quoted above for two reasons. First, Kasparov is suing both defendants on the basis of a written contract, and also seeks to enforce a collateral oral agreement against Thompson. *See* DE 18; DE 30 at 10. The written agreement on which he sues is made up of the three Agreement Documents. DE 30 at 10. Where, as here, a copy of the contract is attached to the complaint, the text of the document controls in the event of a contradiction between the pleading and the exhibit. *See Rapoport v. Asia Electronics Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

Second, notwithstanding his dispute with the defendants, Kasparov continued to accept checks under the Agreement. DE 18 ¶¶ 161-74.[3] Having thus benefitted from the contract on which he now sues, Kasparov cannot deny the provisions he finds inexpedient. *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 155 (E.D.N.Y. 2012) ("a party is estopped from denying a contract provision when it has directly benefited from the contract."); *In re Refco Inc., Sec. Litig.*, 2009 WL 5548666, at *9 (S.D.N.Y. Nov. 16, 2009) ("It is well-settled that a party seeking to obtain the benefits of a contract must also accept its burdens, including contractual forum selection.").

---

[3] Kasparov was still an Ambit consultant when he filed the Amended Complaint on November 16, 2012. DE 18 ¶¶ 161-74. He was terminated and stopped receiving compensation from Ambit in December of 2012. DE 68 ¶¶ 225, 232.

C. <u>Venue</u>[4]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any other district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see also New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (noting the district court's discretionary power to transfer for the convenience of parties and witnesses). "[T]he moving party generally bears the burden of showing that the forum should be changed." *Haskel v. FPR Registry*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 281 (2d Cir. 1978)). However, "once a mandatory forum selection clause is determined to be valid, the plaintiff bears the burden of showing why the contractual provision should not be enforced." *Id.* "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). When there exists a forum selection clause, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

A forum selection clause is "'presumptively enforceable' if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory rather than permissive in nature; and (3) the claims involved are subject to the clause." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 450 (E.D.N.Y. 2013) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d

---

[4] As a preliminary matter, I decide the transfer motion, rather than merely recommend its disposition. *See* 28 U.S.C. § 636 (empowering magistrate judges, upon designation, to "hear and determine any pretrial matter pending before the court" with certain exceptions not pertinent here). The majority view within this circuit is that a magistrate judge has the authority to grant the non-dispositive relief sought in a motion to transfer venue. *See Skolnick v. Wainer*, 2013 WL 5329112, at *1 n.1 (E.D.N.Y. Sept. 20, 2013) (collecting cases). The non-prevailing party may of course seek to have a district judge of the transferor court review such an order, notwithstanding the fact that "transfer orders are not appealable because they are interlocutory rather than final orders." *Cruz v. Ridge*, 383 F.3d 62, 64 (2d Cir. 2004) (citations omitted); *see Kai Wu Lu v. Tong Zheng Lu*, 2007 WL 2693845, at *2 (E.D.N.Y. Sept. 12, 2007) (standard of review); Fed. R. Civ. P. 72(a).

378, 383 (2d Cir. 2007)). If these conditions are met, the clause must be enforced unless the party opposing the forum selection clause makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). As explained below, I conclude that the defendants have satisfied each of those requirements.

First, the forum selection clause was reasonably communicated to Kasparov. "Whether the existence of the clause was reasonably communicated to the parties is a question of law for the court." *KT Exp. v. Wolf Canyon of Am., Inc.*, 2011 WL 2565694, at *2 (S.D.N.Y. June 18, 2011) (citing *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995)). "A forum selection clause stated in clear and unambiguous language … is considered reasonably communicated to the plaintiff in determining its enforceability." *Novak v. Tucows, Inc.*, 2007 WL 922306, at *7 (E.D.N.Y. Mar. 26, 2007) (quoting *Vitricon, Inc. v. Midwest Elastomers, Inc.*, 148 F. Supp. 2d 245, 247 (E.D.N.Y. 2001)). The forum selection clause contained in the Agreement Documents states in clear and unambiguous language: "Jurisdiction and venue of any matter not subject to arbitration shall reside exclusively in Dallas County, State of Texas." DE 18-3 ¶ 9.3.

There is a strong presumption that parties to a written agreement know and understand its terms. *Atl. Container Line AB v. Volvo Car Corp.*, 2014 WL 4730152, at *5 (S.D.N.Y. Sept. 22, 2014) ("a party to a contract is presumed to know its terms and consents to be bound.") (citing *Consol. Edison Co. of N.Y., Inc. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000)); *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (forum selection clause was reasonably communicated to plaintiff despite his claim that it appeared in separate "terms and conditions" document he did not receive and was written in a language he did not understand).

7

Kasparov's allegation that defendants failed to mail a copy of the Agreement, *see* Venue Opp. at 15, even if accepted as true, would not preclude enforcement here. *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 652 (S.D.N.Y. 2015) (rejecting argument that parties were "not subject to the forum selection clause by virtue of the fact that they never received the Terms.") (citing *Horvath*, 461 F. App'x. at 63); *Anwar v. Fairfield Greenwich, Ltd.*, 2010 WL 3910197, at *4 (S.D.N.Y. Sept. 27, 2010) (enforcing forum selection clause despite plaintiff's allegation that he never saw the agreement that contained the clause).

Second, the forum selection clause is mandatory, rather than permissive. *See S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.") (quoting *Phillips*, 494 F.3d at 386); *Gen. Elec. Capital Corp. v. Cutler*, 2015 WL 7444627, at *3 (S.D.N.Y. Nov. 23, 2015) ("Forum-selection clauses are mandatory when they require that disputes be heard exclusively in a particular forum"). The plain language of the clause clearly states that "venue … *shall* reside *exclusively* in Dallas County, State of Texas." DE 18-3 ¶ 9.3 (emphasis added); *see ASM Commc'ns. Inc. v. Allen.*, 656 F. Supp. 838, 839-40 (S.D.N.Y. 1987) (holding that a forum selection clause containing the word "shall" is mandatory).

Finally, Kasparov's claims are subject to the Agreement Documents' forum selection clause. The Second Circuit has held that the scope of forum selection clause "is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties." *New Moon Shipping Co., Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997). Kasparov argues that his claims are not subject to the forum selection clause because that provision is limited to "matter[s] not subject to arbitration" and because the defendants take the position that all of his claims are indeed arbitrable. Venue Opp. at 8 (citing DE 18-3 ¶ 9.3). Such argument would be more

8

persuasive if Kasparov agreed that all of his claims should be arbitrated (although in that case the parties' disputes would still end up being litigated in Texas); but he does not take that position. *See* Arbitration Opp. "A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Anselmo v. Univision Station Grp., Inc.*, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993).

In any event, Kasparov's argument misses an important point. Regardless of the relative precedence of the forum selection and arbitration clauses, the Agreement Documents make it clear that none of Kasparov's claims may be litigated in this court. The non-arbitrable claims, if any, must be litigated in Dallas, which is in the Northern District of Texas; the arbitrable ones must likewise be litigated there, albeit before a private arbitrator rather than in a federal court. But the parties' agreement explicitly precludes any litigation in this district.

Accordingly, I conclude that the defendants have established all three of the *Phillips* factors. As a result, the forum selection clause is presumptively enforceable. The question thus becomes whether any "extraordinary circumstances" warrant denial of the transfer motion. *See Atl. Marine Const. Co.*, 134 S. Ct. at 581. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (internal citations omitted). Kasparov has not argued that any such extraordinary circumstances exist, and I can identify none. I therefore grant the motion to transfer venue.

D.  Arbitration and Stay

For the reasons set forth above, I conclude that this court is not the proper forum for resolving any remaining aspect of the parties' disputes. Consistent with that view, I respectfully defer

9

to the United States District Court for the Northern District of Texas a decision on the defendants' motion to compel arbitration and stay proceedings.

III. Conclusion

For the reasons set forth above, I grant the defendants' motion to transfer venue and respectfully direct the Clerk to transfer this action to the United States District Court for the Northern District of Texas; I defer to that court the resolution of the defendants' motion to compel arbitration and stay further proceedings. I further respectfully direct the Clerk to stay the transfer until March 28, 2016 (the deadline for filing objections to this Order, *see* Fed. R. Civ. P. 72(a)), and, if objections are timely filed, until they are resolved by the assigned district judge.

SO ORDERED.

Dated: Brooklyn, New York
March 10, 2016

                                                                                /s/
                                             JAMES ORENSTEIN
                                             U.S. Magistrate Judge